John L. Colmar and James J. O'Meara, Jr., Plaintiffs-Appellees, v. Greater Niles Township Publishing Corporation and Roland R. Moore, Defendants. Appeal of Roland R. Moore, Defendant-Appellant.

Gen. No. 46,996.

First District, First Division.

March 12, 1957.

Released for publication May 2, 1957.

Thomas C. Strachan, Jr., John R. Whitman, Pope & Ballard, of Chicago, for appellant, Roland R. Moore.

Kirkland, Fleming, Green, Martin & Ellis, of Chicago, for plaintiffs-appellees; Howard Ellis, Max E. Wildman, and Don H. Reuben, of Chicago, of counsel.

JUDGE BURKE delivered the opinion of the court.

John L. Colmar and James J. O'Meara, Jr., sued The Greater Niles Township Publishing Corporation and Roland R. Moore to recover damages based upon allegedly libelous matter published by the corporation in its newspaper. A trial resulted in a verdict finding Moore guilty and assessing damages of each plaintiff at $15,000. The jury then separated. The trial judge later recalled the jury and gave oral instructions, after which the jury retired and returned a second verdict finding the corporation guilty and assessing damages against it in the amount of $15,000 for each plaintiff. Plaintiffs subsequently dismissed the corporate defendant and the court entered two judgments in the amount of $15,000 each against Moore. He ap-

peals. The complaint alleges that plaintiffs are attorneys at law; that the article claimed to be libelous appeared in the October 22, 1953, issue of "The News"; that it was composed, published and circulated by both defendants; and that none of the statements made in the article were true, but were wilfully and maliciously written and circulated for the purpose of damaging plaintiffs' reputations as attorneys and citizens. By their answer the composition, publication and circulation in "The News" of the article was admitted as to the corporation. The answer asserted that Moore in no way participated therein. Defendants stated that the alleged libelous matter was in fact true; that publication of it was provoked and procured by plaintiffs "by openly stating the substance thereof" to third persons; and that the facts set forth in the article were obtained "from trustworthy sources," inducing a belief that they were true.

■■ Defendant maintains that the uncontradicted evidence established, as a matter of law, that the allegedly libelous article was true and constituted a news report published, without malice, on a matter of public interest in the community, and that the court erred in refusing to direct a verdict for the defendants. The headline of the article reports that plaintiffs' clients "sue for redress." The text accuses the two of instigating a lawsuit and charging an "extortionate" fee for their work and concludes by asserting that a spokesman for the property owners stated that plaintiffs "not only are faced with a lawsuit to defend their highhanded action, but also face possible disbarment proceedings because of unethical tactics." Any statement published of an attorney at law with respect to his profession is actionable if it tends to injure or disgrace him as a member of his profession. Oral or written words which impute to him a want of the requisite qualifications to practice law or which

charge him with dishonest or improper practices in the performance of his duties as an attorney are actionable per se. Am. Jur. Sec. 76, page 88. People v. Doss, 318 Ill. App. 387, 384 Ill. 400; Levy v. Gelber, 175 Misc. 746, 25 N.Y.S.2d 148; Weber v. Credit Office, 106 N.Y.S. 583; Brill v. Minnesota Mines, 274 N. W. 631.

■ ■ No suit was filed against plaintiffs for redress. After the publication of the article an attorney for the former clients of plaintiffs filed a suit for an accounting. Plaintiffs were joined in that suit because of their stakeholder position. There was no evidence to sustain the statement in the article that a suit was instigated by plaintiffs. The record establishes that plaintiffs were retained when a citizen representing various persons approached them. There was no evidence to support the statement that plaintiffs charged an extortionate fee. Defendant asserts that the truth of the statement attributed to the spokesman of the property owners to the effect that plaintiffs face "possible disbarment proceedings for unethical conduct" is established by the record. He also says that the publication was justified and made without malice with reference to a matter of public interest in the community. The person mentioned in the article as the spokesman did not testify. No disciplinary or disbarment proceedings were filed against the plaintiffs. In justifying the publication defendants place great reliance on a wire recorded report of a conversation between the plaintiffs and the man who was later mentioned as the spokesman. The defendant argues that the report of the recorded conversation establishes that in negotiating and settling their clients' case the plaintiffs were representing "conflicting interests" and that in so doing, they violated the canons of professional ethics. The recorded conversation is the justification by the defendant for the

271

alleged statement by a spokesman for the property owners that plaintiffs face "possible disbarment proceedings for unethical conduct." Plaintiffs assert that the evidence concerning the settlement meeting does not establish that they were in any way disloyal to their clients. There is support for the plaintiffs' contention that the political talk on which defendant relies came at the latter part of the meeting, and that the proposals for a political truce were not conditioned on the settlement of the zoning case. We conclude that the court was right in deciding that the question of the truth of the libel was for the jury. There is competent evidence to sustain the verdict. We are of the opinion that the argument of the defendant that the verdict is against the manifest weight of the evidence is without merit.

We turn to a consideration of defendant's assertion that plaintiffs' counsel was guilty of prejudicial misconduct in making, during his opening statement, inflammatory statements and assertions of fact, which were not proved, concerning allegedly improper motives and acts of malice against plaintiffs on the part of the defendant. In his opening statement to the jury counsel said that "Moore had a financial interest" in the "water and sewage programs" in their town; that "it was discovered" by plaintiffs "and some other civil people in the community" that Moore "had a financial interest . . . in what was done by the citizens in that he wanted the people in the Village to vote one particular way"; that "the referendum was defeated twice, partially . . . due to the efforts" of plaintiffs "who went around seeking votes against it from the citizens"; that "he took after the two young lads [plaintiffs]"; that "in the fall of '53 the water and sewage bond problem came up again, and by this time Mr. Moore and his friends had bought up the bonds, but it had to be submitted to a vote of the citizens of

■■■■■■■■■■■■■■■■■■■

the community for a referendum"; and that plaintiffs "again . . . took after him [Moore], circulated petitions, and they beat the referendum and Mr. Moore was left holding the bonds which he never should have purchased in the first place, honestly." Plaintiffs' counsel continued: "That happened in the fall of 1953. Immediately he [Moore] initiated a series of articles in the paper which he owned, headlines in every issue starting with October 1, 1953."

■ These statements were made despite repeated objections, including a request for a mistrial, and in the face of warnings by the court that plaintiffs' counsel was taking on the responsibility of proving them. On such objections and warnings, assurances were given by counsel that there would be proof of them. No evidence was introduced to support any of these charges against Moore. Both a general and explicit instruction were given to the jury ordering them to disregard the statement of counsel because it was not sustained by any evidence. Counsel for the plaintiffs also told the jury in his closing argument to disregard his remarks concerning Moore's ownership of the bonds because he did not prove it. The attorney for the defendant was permitted freely to comment upon the fact that plaintiffs had not introduced any evidence to support this portion of the opening statement. In McCarthy v. Spring Valley Coal Co., 232 Ill. 473, the attorney for the plaintiff who was injured while working in defendant's coal mine made a statement to the jury in his opening statement concerning the size of plaintiff's family. The objection to this was sustained by the trial court. In ordering a new trial the Supreme Court said (479):

"The fact once lodged in the minds of the jury could not be erased by an instruction, and appellee by this statement secured the benefit of the fact to the same extent as if he had introduced evidence to prove it.

273

. . . It is impossible to tell the effect, on the verdict, of the impressions wrongfully conveyed to the jury's mind by the improper conduct of counsel."

The verdicts in the instant case are for substantial amounts. In view of the nature of the case it is unlikely that the impression conveyed to the jury in the opening statement could be removed by the statements of counsel or the instruction. The statement deprived the defendant of the fair trial to which he was entitled.

██ ██ The defendant complains that prejudicial error was committed when he was asked without any warrant whether he had used aliases or received money under any other names. Counsel first asked the defendant whether he had been known "under any other names," to which he replied in the negative. He was then asked whether he had "ever been known or received any money under the name of Johnson." Objection to this question was sustained. Plaintiffs' next question was, "Have you ever been known under the name of or received any money under the name of Laritz?" This testimony could not be received on the theory that the plaintiff was showing the pecuniary circumstances of the defendant. The law does not permit such evidence where there is more than one tortfeasor joined as defendant in the suit. See Spelina v. Sporry, 279 Ill. App. 376, 385. Under the issues and the record the court erred in permitting the examination of Moore along this line. The defendant urges that the court erred in improperly admitting conclusions and opinions of the witnesses. We do not think that the court committed error in overruling defendant's objections that certain questions called for the conclusions of the witness.

██ Defendant insists that the court erred in preventing defendant from introducing in mitigation of

274

damages evidence as to sources on which defendants relied in writing the allegedly libelous article, and in refusing to give defendants' instruction tendered in that connection. The article which the defendants sought to introduce was the October 19, 1953, issue of the North Side Sunday Star. They made an offer of proof with respect to this article, in chambers, that the defendant newspaper did in fact rely upon it as a source for the alleged libelous article. Plaintiffs say that the authorities support the propriety of such evidence, at least in mitigation of damages. We are of the opinion that the article in the Star has no relationship to the libel. Nowhere does it describe a suit for redress, a solicitation, an extortionate fee or a disbarment proceeding, nor are the plaintiffs' names mentioned.

■■ The defendant states that the court erred in refusing to give the following instruction:

"Even if you should find that the article here complained of is false and libelous, yet if you believe from the evidence that defendant Roland R. Moore did not himself participate in the preparation, composition, printing, publication or circulation of said article or have knowledge thereof prior to its publication, then you should find the defendant Roland R. Moore not guilty."

The defendant says that the court erred in giving the following instruction:

"If you find that the article here complained of is false and libelous, and if you further find that the defendant, Roland R. Moore, did not himself participate in the preparation, composition, printing, publication or circulation of said article, or have knowledge thereof prior to its publication, then you may not award punitive damages against the said Roland R. Moore."

275

The trial court in effect instructed the jury that Moore was liable with the corporation for everything connected with the alleged libel, whether or not he participated, excepting only as to punitive damages. If the jury found Moore a nonparticipant, then under the law he could not be held liable for any damages at all. In Folwell v. Miller, 145 F. 495, the court said (495):

"That the defendant was not liable merely because he was president of the corporation and a stockholder is a proposition which does not require extended discussion. The president of the corporation is an agent of very extensive, but not unlimited, powers. He is not personally liable because of his official capacity, any more than are the directors or stockholders, for torts committed by the corporation, in the absence of personal participation in the tortious act. As an agent, he is not liable for the acts of misfeasance or nonfeasance of his subordinate agents or employees. . . . Of course, he is liable equally with the proprietor when he has personally assisted in any manner in the preparation, revision, or otherwise of the publication of the libel. There is doubtless a presumption of fact that the managing editor has supervised the contents of the newspaper, and performed the duties of his office in that behalf. So doubtless when it appears that he has actually done so, the fact that he has omitted to notice some of the contents will not relieve him from the consequences of his participation. But when it appears affirmatively that he was not on duty during any part of the time between the reception of the libelous matter by the newspaper and the publication, and could not have had any actual part in composing or publishing, we think he cannot be held liable without disregarding the settled rule of law by which no man is bound for the tortious act of another over whom he has not a master's power of control. The action of libel is not based upon neglect of duty, but is

for a positive tort; and there is no reason upon which an editor, any more than any other individual, can be held responsible for such a tort when it appears that he was actually innocent of all complicity in it."

We are of the opinion that on a retrial the tendered instruction should be given and the instruction which was given should be refused. Moore's participation in the preparation, composition, printing, publication or circulation of the article became a question of fact for the jury.

■ Moore cannot complain of any error in the return of a verdict against the corporation in view of the subsequent dismissal of the suit against the corporation. Finally, defendant states that the trial court erred in refusing to instruct the jury that under the proof the words published came under the class which the law designates as "privileged communications" and plaintiffs cannot recover unless they show actual malice, that is, hatred or ill will on the part of the defendant, or show a want of just cause or excuse in making the statements in the article. The court properly refused to give the instruction. Under the evidence the communication was not privileged.

For the reasons stated the judgment of the Superior Court of Cook county is reversed and the cause is remanded for a new trial.

Judgment reversed and cause remanded for a new trial.

NIEMEYER, P. J. and FRIEND, J., concur.

ON REHEARING.

Having considered the points discussed in the petition for rehearing and the answer thereto, we have decided to adhere to the views expressed and the directions given in the opinion heretofore filed.