DAVID N. MISSNER, Plaintiff-Appellant, v. ROBERT A. CLIFFORD, Defendant-Appellee.

First District (3rd Division)   No. 1—08—0686

Modified opinion filed August 12, 2009.

752

Philip J. Nathanson and Meredith Nathanson, both of Nathanson Law Firm, of Chicago, for appellant.

Peter C. John, Alyssa M. Campbell, and Thomas C. Koessl, all of Williams, Montgomery & John Ltd., of Chicago, for appellee.

JUSTICE THEIS delivered the opinion of the court:
In this defamation action, plaintiff David N. Missner appeals from

an order in which the circuit court converted defendant Robert A. Clifford's motion to dismiss under section 2—619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2—619(a)(9) (West 2006)) into a motion for summary judgment under section 2—1005 of the Code (735 ILCS 5/2—1005 (West 2006)), and subsequently granted summary judgment in favor of Clifford. On appeal, Missner argues that the circuit court erred in: (1) converting Clifford's motion to dismiss to a motion for summary judgment; and (2) granting summary judgment for Clifford on the grounds that his publication of defamatory material was protected by the fair report privilege. For the following reasons, we reverse and remand for further proceedings.

In his complaint[1], Missner, an attorney, alleged that he was retained by Nicholas Betzold, Jr., to represent him personally in a chapter 11 bankruptcy proceeding (11 U.S.C. §1101 *et seq.* (2000)). *In re Betzold*, 316 B.R. 907 (Bankr. N.D. Ill. 2004). At the same time, Betzold was involved in a separate arbitration proceeding against three minority shareholders of the financial services companies that he controlled. Missner did not represent Betzold or the companies in the arbitration.

Soon after initiating the bankruptcy proceeding, Missner filed a motion in that case to stay the pending arbitration because the arbitrator had an undisclosed relationship and "common association" with attorney Michael Ficaro, who represented the shareholders in the arbitration. In support of his motion, Missner attached the affidavit of a former Federal Bureau of Investigation (FBI) agent named Francis Marrocco, which Betzold's arbitration attorneys obtained while attempting to substitute the arbitrator in that proceeding. Missner asserted that the arbitration attorneys gave him the Marrocco affidavit before he filed the bankruptcy proceeding; he did not participate in procuring the affidavit.

Approximately one year after Missner filed the bankruptcy proceeding and the motion to stay, Ficaro filed a complaint for defamation against Missner and others arising out of the filing of the Marrocco affidavit in the bankruptcy proceeding. Ficaro v. Betzold, No. 05—L—8474 (Cir. Ct. Cook Co.).[2] Clifford represented Ficaro in that defamation suit through his law firm, Clifford Law Offices. Clifford was listed as "Attorney for Plaintiff" on the original and first amended

---

[1]Missner's law partner, William Choslovsky, also was a plaintiff in the original complaint. However, Choslovsky later voluntarily dismissed the complaint as to himself and refiled a separate complaint.

[2]The case is currently on appeal in another division of this court (appeal Nos. 1—07—1469 and 1—07—3433 (consolidated)).

Ficaro complaints, along with attorneys Richard Burke and Shannon McNulty.

Missner alleged that shortly after filing the first amended complaint in the Ficaro defamation case (Ficaro complaint), Clifford issued a defamatory press statement to the Chicago Tribune and the Chicago Daily Law Bulletin, which accused Missner of the following acts in the course of the bankruptcy proceeding:

> "(a) 'forg[ing] the signature of an ex-FBI agent to a fictitious, created, false and untrue affidavit...'
>
> (b) ma[king] 'intentional false and scurrilous statements... in an attempt to improperly influence the outcome of some vigorously contested corporate litigation...'
>
> (c) concoct[ing] the Marrocco [the ex-FBI agent] affidavit 'to try to pressure Ficaro to settle a lawsuit in which his clients were seeking $15 million from the businessman, Nicholas Betzold.'
>
> (d) 'intend[ing] to extort Ficaro and his law firm into settling' the lawsuit by using the Marrocco affidavit."

Missner alleged that the press statement constituted defamation *per se* because it conveyed that he lacked integrity in the discharge of his professional duties and accused him of committing the crimes of forgery and extortion. Missner also alleged that Clifford knowingly made the above false statements to the media, or made them with reckless disregard for their truth or falsity, because Clifford made no inquiries before issuing the statements, as evidenced by the fact that the arbitration attorneys, who allegedly obtained the affidavit, were not named as defendants in the Ficaro complaint. Missner attached no exhibits to his complaint.

In response, Clifford filed a combined motion for summary judgment and motion to dismiss the complaint under section 2—619(a)(9) of the Code. He argued for summary judgment on the grounds that he did not publish the statements of which Missner complains or cause them to be published. He noted that the Ficaro complaint to which Missner refers was verified by Ficaro and signed and filed by attorney Burke. In an affidavit attached to the combined motion, Clifford denied communicating with any newspaper representatives about the Ficaro complaint or the contents of the press statement of which Missner complains. He stated that he was out of town at the time the Ficaro complaint and press statement were issued and that he did not communicate with anyone in his office about the press statement or newspaper articles. He also stated that he did not review or discuss the press statement before it was issued.

Clifford also attached the affidavit of Pamela Menaker, communications partner at Clifford Law Offices. She admitted sending the press

statement to the Chicago Tribune by e-mail, but had no recollection of contacting the Chicago Daily Law Bulletin. She drafted the press statement in consultation with Ficaro and Burke, but did not discuss or review the press statement with Clifford. She attached a copy of the press statement, entitled "Statement of Robert A. Clifford in response to the filing of the Amended Complaint before Judge Donald Suriano in *Ficaro v. Betzold, et al.,* No. 5 L 8474," to her affidavit.

Clifford filed a motion to dismiss in the alternative in which he asserted three affirmative defenses. First, he argued that regardless of who published the press statement, the fair report privilege protected that publication because it was a fair abridgement of the contents of a filed complaint. Second, he argued that the statements of which Missner complained could be construed innocently as "an attorney's biased presentation of his client's view of a pending cause of action." Additionally, the press statement could be "reasonably interpreted as referring to someone other than the plaintiffs." Third, he argued that the press statement is an expression of opinion protected by the first amendment. In addition to his and Menaker's affidavits, Clifford attached several exhibits to his combined motion, including a copy of the Ficaro complaint, a copy of the press statement that was sent to the Chicago Tribune, and the articles published in the Chicago Tribune and the Chicago Daily Law Bulletin.

The parties agreed to participate in limited discovery regarding the issues raised in Clifford's combined motion. As part of that agreement, Missner deposed Clifford and Menaker, noting on the record the limited scope of the deposition and the parties' understanding that the witnesses could be recalled to testify about the allegations in the underlying complaint if Missner's case survived the combined motion.

Menaker testified that she sent the press statement and a file-stamped copy of the amended Ficaro complaint to the Chicago Tribune. She relied upon the original and amended Ficaro complaints and Burke for information about that case. She believed she had the authority of the law firm to issue a press statement in Clifford's name. She did not contact Clifford before issuing the press statement. She sent the press statement knowing that the newspaper would only accept it if it was a statement from Clifford individually and not a statement of the law firm.

In his deposition, Clifford testified that Menaker does not serve as an independent spokesperson for the law firm. She issues press statements in Clifford's name with "some measure of direction" from him. When asked whether Menaker acted as his apparent agent in issuing the press statement, Clifford stated that newspapers only accept statements from individuals and not from entities such as law firms. He

added that "[u]nquestionably[, the press statement] is sent as a statement of Robert A. Clifford. Unquestionably[,] Pamela Menaker is the one who did it. Unquestionably[,] she ultimately had the authority to do so ***."

Clifford denied that he had seen the amended Ficaro complaint before it was filed or that he participated in the drafting of it, although he had seen the original complaint before it was filed. He testified that between the time of filing the original and amended Ficaro complaints, he participated in meetings with Ficaro and others pertaining to the case and "whatever pleadings were filed or to be filed." He further stated that up to the time of filing the amended Ficaro complaint, he participated in meetings, discussions, and planning about allegations involving the Marrocco affidavit. He also participated in strategy and planning sessions to discuss how to defend the amended Ficaro complaint.

Clifford acknowledged that Burke was authorized to include his name in the signature block on the Ficaro complaint filed with the court, although Burke signed and filed it with the court, which he also was authorized to do. Clifford stated that he does not routinely sign any pleadings himself. However, he also stated that it was not his firm's practice to routinely include his name on every pleading that was filed. Additionally, Clifford acknowledged that he had the authority to withdraw any pleading if he felt it was improperly filed for any reason, although he did not do so in this case.

In responding to the motion to dismiss, Missner preliminarily argued that the substance of Clifford's motion challenged the essential allegations of his complaint and was not proper for disposition under section 2—619(a)(9). He claimed that the three privileges asserted by Clifford were not true affirmative defenses but, rather, Clifford was attacking the factual bases of his *prima facie* case. Alternatively, Missner argued that if the court proceeded on the motion as one for dismissal, he should be permitted to use Clifford's and Menaker's depositions to rebut those factual attacks.[3] He relied on this argument as a basis for denial and did not seek to strike the motion.

---

[3]Missner did not attach copies of the depositions to his response motion or cite to specific pages of the depositions. However, it appears that Missner tendered the depositions to the court in their entirety at the time of the hearing, although the transcript of the hearing is not included in the record. Nevertheless, Clifford acknowledged in a later filing that Missner tendered copies of the depositions to the court and the court's order indicates that it did have the depositions before it at the time of disposition.

He argued in substance that the fair report privilege did not shield Clifford from liability in this case because Clifford improperly conferred the privilege on himself, according to section 611, comment *c*, of the Restatement (Second) of Torts. Restatement (Second) of Torts §611, Comment *c*, at 299 (1977). That is, Clifford caused the publication of the original defamatory statements in the Ficaro complaint and he published a fair abridgment of those statements by way of the press statement. Additionally, Missner maintained that the press statement was not susceptible to an innocent construction nor was it a constitutionally protected statement under the first amendment. Finally, he argued that the court should deny Clifford's motion for summary judgment because the depositions provided at least circumstantial evidence that Clifford published the press statement or caused it to be published by way of an actual or apparent agency relationship with Menaker.

The court denied the motion for summary judgment. It found that Clifford authorized Menaker to issue press statements in his name. Clifford was "fully aware of and approved" the procedure by which media outlets contacted Menaker for press statements. Thus, a jury could reasonably conclude that Menaker was Clifford's agent for purposes of issuing the press statement, regardless of whether Clifford provided any input in drafting the statement or whether he reviewed the statement.[4]

The court then declared that "[b]ecause defendant's press statement was not included in the pleadings," the motion to dismiss was "more in the nature of a motion for summary judgment" and considered it as such. It determined that Missner had established a *prima facie* case of defamation; therefore, it had to determine whether the privileges asserted by Clifford applied to shield him from liability. It rejected Clifford's arguments that the press statement was susceptible to an innocent construction and that it was a constitutionally protected opinion under the first amendment.

As to the fair report privilege, the court acknowledged Missner's argument that one cannot confer that privilege on himself by making the original defamatory statement and reporting on it. However, it determined that Clifford did not make the original defamatory statements in the Ficaro complaint. Rather, it found that Ficaro made the statements by verifying the Ficaro complaint pursuant to section 1—109 of the Code (735 ILCS 5/1—109 (West 2006)). Therefore, the self-conferral exception did not preclude Clifford from asserting the

---

[4]The circuit court's ruling on the summary judgment motion is not before us on appeal.

fair report privilege. The court went on to conclude that the press statement was a fair abridgment of the allegations contained in the amended complaint. Therefore, the press statement was privileged, regardless of whether it was he or Menaker who made the statement, and summary judgment for Clifford was appropriate.

Missner sought reconsideration of the court's ruling, first arguing that the court erred in converting the motion to dismiss to a summary judgment motion. He argued that there was no basis for such conversion where Clifford neither mislabeled nor misdesignated his motion as one for dismissal. Furthermore, he claimed that he was prejudiced because by finding that Ficaro made the original defamatory statement, the court disposed of the case on an issue that the parties had not argued and could not have investigated due to their stipulation to limit the scope of discovery.

Missner also argued on the merits that the court erred in finding that Ficaro's verification constituted a "publication" in the parlance of defamation law. He contended that a verification is an oath that the contents of the pleading are true, but the pleading is not communicated to third parties, and thus not a "publication," until it is filed with the court. Alternatively, if Ficaro's verification was the original publication of the defamatory statements, then Clifford was still liable as a republisher when he caused the Ficaro complaint to be filed.

The court declined to reconsider its order, noting that the parties treated the motion to dismiss as a summary judgment motion themselves. They engaged in discovery and relied upon extrinsic evidence in support of their arguments on the motion. They also "argued the applicability of the fair report privilege to the facts in this case. In other words, the parties structured the briefs in conformance with a motion for summary judgment."

The court also rejected Missner's claims of prejudice. First, it noted that Missner never requested additional discovery or objected to the limitations on the scope of discovery; thus, he cannot now claim that he was unable to pursue discovery on the issue of Ficaro's verification. Additionally, it found Missner's argument that Ficaro's verification raised a new issue not addressed by the parties to be "misleading." It concluded that Missner raised the issue himself when he argued that Clifford could not self-confer the fair report privilege, forcing the court to make a determination as to who made the original defamatory statements.

On appeal, Missner reasserts the arguments made in his motion for reconsideration, namely that: (1) the circuit court erred in converting the motion to dismiss to a summary judgment motion; and (2) the

court erred in applying the fair report privilege here because Clifford improperly conferred the privilege upon himself.

Missner first argues that the circuit court improperly converted the motion to dismiss into a summary judgment motion *sua sponte* after it denied the motion to dismiss. He cites to the court's dispositional order in its entirety in support of that contention. However, nothing in the text of the order indicates that the court first denied the motion to dismiss and then granted summary judgment when no motion was before it. On the contrary, the court held that Clifford's motion was "improper" under section 2—619(a)(9) and was "in the nature of a motion for summary judgment"; therefore, it would be treated as such. It made no ruling on the motion under section 2—619(a)(9).

Missner further objects to the court's conversion on the grounds that Clifford deliberately, though improperly, brought his motion as one for dismissal and did not mislabel or misdesignate the arguments in his combined motion. That, he argues, is the only permissible basis for making such a conversion under *Malanowski v. Jabamoni*, 293 Ill. App. 3d 720, 723-24 (1997), and then only if the opposing party suffers no prejudice.

Although we are compelled to note that converting the motion from one for dismissal to one for summary judgment was unnecessary under the facts of this case, it was not reversible error because Missner has suffered no prejudice. Significantly, the court's analysis would have been the same regardless of which procedural device it employed.

Contrary to Missner's assertion below, the privileges asserted by Clifford are true affirmative defenses that may be raised in a section 2—619(a)(9) motion to dismiss a defamation action. *Anderson v. Beach*, 386 Ill. App. 3d 246, 248 (2008); *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 580-81, 585 (2006). Additionally, contrary to the circuit court's determination, section 2—619 and Supreme Court Rule 191 permit a court to consider depositions and affidavits offered in support of or in opposition to a motion to dismiss. *Stafford-Smith, Inc. v. Intercontinental River East, LLC*, 378 Ill. App. 3d 236, 239-40 (2007), citing *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 262 (2004); see also 735 ILCS 5/2—619(a), (c) (West 2006); 210 Ill. 2d R. 191. Therefore, Clifford properly asserted the privileges as affirmative defenses in his section 2—619 motion to dismiss and the court should have considered them as asserted.

However, in the end, it is a distinction without a difference. When reviewing a motion to dismiss under section 2—619, the circuit court must determine whether the motion and the documents supporting it disclose any disputed issues of fact and, ultimately, whether the af-

firmative defense negates the plaintiff's cause of action in its entirety. *Turner v. 1212 S. Michigan Partnership*, 355 Ill. App. 3d 885, 892 (2005), quoting *Waterford Executive Group, Ltd. v. Clark/Bardes, Inc.*, 261 Ill. App. 3d 338, 343 (1994). Similarly, summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

■ Thus, whether the court made that determination under section 2—619 or on summary judgment in this case, the analysis would have been the same: did the evidence submitted by the parties demonstrate the existence of a question of material fact to preclude disposition as a matter of law? As such, Missner cannot demonstrate that he was prejudiced by the court's procedural maneuver in converting the motion and there is no reason to reverse the trial court on that basis. See *Turner*, 355 Ill. App. 3d at 893; see also *Malanowski*, 293 Ill. App. 3d at 724. Missner's stated claim that he suffered prejudice because he was unable to conduct discovery on or otherwise respond to the court's finding that Ficaro made the original defamatory statement is best addressed below in our review of the substance of the court's order.

The circuit court determined that Missner established a *prima facie* case of defamation *per se*. See *Solaia Technology*, 221 Ill. 2d at 579-80 (describing five categories of statements that are defamatory *per se*). However, even a statement that is defamatory *per se* may not be actionable if an absolute or qualified privilege applies to shield a defendant from liability. *Solaia Technology*, 221 Ill. 2d at 580-81, 585. Here, we review the circuit court's determination that as a matter of law, Clifford was entitled to assert the fair report privilege and was not precluded from doing so by the self-conferral exception.

■ The fair report privilege is a qualified privilege that protects:
"[t]he publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern *** if the report is accurate and complete or [is] a fair abridgement of the occurrence reported." Restatement (Second) of Torts §611, at 297 (1977) (as adopted by our supreme court in *Solaia Technology*, 221 Ill. 2d at 585).

It is an exception to the general common law rule that the republisher of defamatory material bears the same degree of liability for defamation as the original publisher. *Catalano v. Pechous*, 83 Ill. 2d 146, 168 (1980); S. Terilli, S. Splichal & P. Driscol, *Lowering the Bar: Privileged Court Filings as Substitutes for Press Releases in the Court of Public Opinion*, 12 Comm. L. & Pol'y 143, 157-58 (2007); 1 R. Sack, Sack on

Defamation: Libel, Slander & Related Problems, 7—2, 7—3 (3d ed. 2004) (noting that courts traditionally refuse to distinguish between "tale bearers" and "tale makers"). This privilege protects our system of self-governance and serves the public interest by permitting access to all public proceedings, and judicial proceedings and filings in particular, regardless of whether defamatory statements are made in those proceedings. *Solaia Technology*, 221 Ill. 2d at 585, 600 (Freeman, J., concurring in part and dissenting in part) (explaining that the privilege is based on several theories arising out of a reporter's roles as agent for the public, government watchdog, and educator). These larger civic interests outweigh a competing interest in compensating persons for loss of reputation resulting from publication of defamatory statements contained in public or judicial proceedings. *Solaia Technology*, 221 Ill. 2d at 599 (Freeman, J., concurring in part and dissenting in part), quoting J. Lee & B. Lindahl, Modern Tort Law §36:32, at 36-47 (2d ed. 2002).

Both media and nonmedia reporters may claim protection under the privilege. Restatement (Second) of Torts §611, Comment *c*, at 299 (1977); *Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 707 (2000). But see B. Wessel, *Libel Claims Against Lawyers for Statements Made to the Press*, 16 Fall Comm. Law. 21, 22 (1998) (noting that some jurisdictions limit the application of the privilege to media reporters only). However, the availability of the privilege does not depend on the status of the reporter; rather, it is conditioned upon the fairness and accuracy of the report. *Solaia Technology*, 221 Ill. 2d at 599 (Freeman, J., concurring in part and dissenting in part), citing J. Lee & B. Lindahl, Modern Tort Law §36:24, at 36-39 (2d ed. 2002). For example, a reporter abuses the privilege when he mischaracterizes an allegation in a pleading as a fact or adds information to the report that was not part of the official proceeding. 12 Comm. L. & Pol'y, at 162. Many of the cases involving the fair report privilege focus on the content of the report in relationship to the original defamatory statement. See, *e.g.*, *Solaia Technology*, 221 Ill. 2d at 595-96; *Myers v. The Telegraph*, 332 Ill. App. 3d 917, 924 (2002).

However, before a court can determine whether the fair report privilege has been abused, it must first decide whether the privilege applies where it is asserted. Application of the privilege varies by jurisdiction and is controlled by statute in a few states. 16 Fall Comm. Law. at 22; see, *e.g.*, N.Y. Civ. Rights Law §74 (1992) (fair report privilege applies to any person, firm, or corporation reporting on public proceedings); Cal. Civ. Code §47 (2004) (any report of public proceedings is privileged, except as noted therein); Tex. Civ. Prac. & Rem. Code Ann. §73.002 (2005) (fair report privilege applies to media reporters alone in reporting on public proceedings).

Under the common law rule, "[a] person cannot confer [the fair report] privilege upon himself by making the original defamatory publication himself and then reporting to other people what he had stated" under the guise of privilege, even if the original publication was itself privileged. Restatement (Second) of Torts §611, Comment *c*, at 299 (1977). Some jurisdictions have modified the common law rule to specifically afford litigants or their attorneys heightened protection for reporting on the contents of pleadings they have published or court proceedings in which they participate. 16 Fall Comm. Law. at 22; see, *e.g.*, *Rosenberg v. Helinski*, 328 Md. 664, 685-86, 616 A.2d 866, 876-77 (1992) (rejecting section 611, comment *c*, and holding that the "[fair report] privilege will be forfeited only if the defamer illegitimately fabricated or orchestrated events so as to appear in a privileged forum in the first place. *** It is clear that [the privilege] *** aims to deter those persons who, acting out of a corrupt defamatory motive, abuse the privilege accorded to fair and accurate reports of judicial proceedings").

Although our supreme court has not squarely addressed this threshold issue, it has otherwise adopted section 611 of the Restatement (Second) of Torts, including comment *c*. *Catalano*, 83 Ill. 2d at 167-68; *Solaia Technology*, 221 Ill. 2d at 588, quoting Restatement (Second) of Torts §611, Comment *c*, at 299 (1977). See also *Kurczaba*, 318 Ill. App. 3d at 707-08 (concluding, with little discussion, that the privilege did not apply where an attorney published the defamatory contents of a pleading he also drafted). The court's endorsement of section 611, comment *c*, is made without reservation, unlike its treatment of section 611, comment *e*. *Solaia Technology*, 221 Ill. 2d at 588-89 (rejecting section 611, comment *e*, which would have required that a court take some judicial action in a matter before a reporter could publish a report on the contents of a pleading). Therefore, we are bound to apply section 611, comment *c*, in accordance with supreme court precedent. *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008).

Clifford claims that the fair report privilege protects him from liability in this case because even if he did publish the press statement, the original defamatory statements in the Ficaro complaint were published either by Ficaro through his verification of the complaint or by Burke at the time he filed the complaint with the court. The circuit court determined as a matter of law that Ficaro published the original defamatory statements contained in the complaint by way of verification. Additionally, it concluded that Clifford's press statement was a fair report of the Ficaro complaint; therefore, Clifford was protected by the fair report privilege.

We disagree. Ordinarily, determining the applicability of a privilege is a question of law. *Solaia Technology*, 221 Ill. 2d at 585. However, in this case, there remains a question of material fact as to who published the original defamatory statements; therefore, summary judgment was improper.

■ "Publication" is a term of art in defamation law and is an essential element of any defamation claim. *Emery v. Northeastern Illinois Regional Commuter R.R. Corp.*, 377 Ill. App. 3d 1013, 1021-22 (2007). Any act by which defamatory matter is communicated to someone other than the person defamed is a publication. *Anderson*, 386 Ill. App. 3d at 249; Restatement (Second) of Torts §577, Comment *a*, at 201-02 (1977). To "communicate" means to convey information to another. Webster's Third New International Dictionary 460 (1981). Whether a publication occurred at all is a question for the jury. Restatement (Second) of Torts §617, Comment *a*, at 315 (1977).

We have previously recognized that the filing of an amended complaint may constitute a publication. *Withall v. Capitol Federal Savings of America*, 155 Ill. App. 3d 537, 542 (1987). We have also recognized that the communication of defamatory statements between agents of the same principal, arguably as between Clifford and Burke, is a publication. *Popko v. Continental Casualty Co.*, 355 Ill. App. 3d 257, 264-65 (2005); Restatement (Second) of Torts §577, Comment *i*, at 201-02 (1977). Additionally, the communication of defamatory material from a principal to his agent, as in an attorney-client relationship, also may be a publication. Restatement (Second) of Torts §577, Comment *e*, at 203 (1977). Although such publications may themselves be privileged, that does not affect the applicability of the fair report privilege. Restatement (Second) of Torts §611, Comment *c*, at 299 (1977).

■ On the other hand, our research has revealed no support for the proposition that a verification constitutes a publication, nor has Clifford provided us with any. The circuit court relied solely on section 1—109 of the Code to support its position; however, we are not convinced that the language of the statute alone brings a verification within the broad definition of a "publication." A section 1—109 verification is a communication to the court that the verifier attests, under penalty of perjury, that the statements contained in a pleading are true. 735 ILCS 5/1—109 (West 2006); 3 R. Michael, Illinois Practice §23.7, at 326-27 (1989) ("Verification consists of an oath of the truthfulness of the pleading"). However, a verification does not stand on its own; it is submitted to the court along with the pleading to which it refers. That is, the statements being verified are not communicated until the pleading is filed with the court. Therefore, a verification is not, by itself, a publication.

■ Whether a verifier, or any other person, participated in the publication is a different, but related, question. Restatement (Second) of Torts §617, Comment *a*, at 315 (1977). " 'All persons who cause or participate in the publication of [defamatory] matters are responsible for such publication.' " *Van Horne v. Muller*, 185 Ill. 2d 299, 308 (1998), quoting 33A Ill. L. & Prac. *Slander & Libel* §83 (1970). In fact, in *Van Horne*, the supreme court established that more than one person may be liable for defamation based on their participation in the publication. *Van Horne*, 185 Ill. 2d at 308 (holding that plaintiff adequately alleged that a morning radio host and his sidekick "both participated in the publication" of the same defamatory story). Once again, however, that question is reserved for the jury. *Colmar v. Greater Niles Township Publishing Corp.*, 13 Ill. App. 2d 267, 277 (1957); Restatement (Second) of Torts §617, Comment *a*, at 315 (1977). Although a court may make that determination as a matter of law where the evidence is so overwhelming that it presents "with convincing clarity," the evidence in this case is far from convincing. Restatement (Second) of Torts §617, Comment *a*, at 315 (1977). Accordingly, the circuit court erred in deciding as a matter of law that Ficaro published the original defamatory statement through verification when that question belonged within the province of the jury.

■ Moreover, even if Ficaro's verification could be said to be a publication, that does not preclude the possibility that Clifford and Burke also may be liable for that publication. See *Van Horne*, 185 Ill. 2d at 308; *Catalano*, 83 Ill. 2d at 168. It follows that if either or both of them did participate in the publication of the original defamatory statements, the self-conferral exception would preclude them from enjoying the benefit of the fair report privilege as well. Here, the record contains some evidence that Clifford and Burke participated in the publication. For example, Burke signed the Ficaro complaint and filed it with the court, according to Clifford.

Additionally, and for the purposes of this case, the original and amended Ficaro complaints list Clifford as the lead attorney in Ficaro's defamation suit against Missner, with the signature block on those pleadings appearing as follows:

"**ATTORNEYS FOR PLAINTIFF**
Robert A. Clifford
Richard F. Burke, Jr.
Shannon M. McNulty
CLIFFORD LAW OFFICES, P.C.
120 N. LaSalle Street, 31st Floor
Chicago, Illinois 60602."

Clifford testified that although he infrequently signed any pleadings filed on behalf of his clients, it was not his firm's practice to include his name on all pleadings simply as a matter of course. Although he testified that he did not sign, review, or approve the content of the amended complaint before it was filed, he admitted that he was involved in planning meetings and discussions pertaining to "pleadings [that] were filed or to be filed" between the time of filing the original and amended Ficaro complaints. He also admitted that he was involved in strategy discussions regarding how to defend the amended Ficaro complaint after it was filed. He testified that he had the authority to withdraw a filed pleading that he felt was for any reason improper, although he did not do so in this case.

■ This evidence is sufficient to pose a question of fact as to whether Clifford participated in the publication of the original defamatory statements, which publication may have occurred at the time the Ficaro complaint was filed or at another time determined by the jury. See *Van Horne*, 185 Ill. 2d at 308; *Colmar*, 13 Ill. App. 2d at 277. Additionally, the circuit court has already determined that a question of fact exists as to whether Clifford was responsible for publishing the press statement. Therefore, we cannot say as a matter of law that the fair report privilege applies notwithstanding the self-conferral exception. The circuit court erred in granting summary judgment in Clifford's favor on this issue. Accordingly, we reverse the circuit court's order and remand for further proceedings.

Following our opinion, Clifford filed a petition for rehearing, arguing that we should have addressed the additional arguments asserted in his original motion to dismiss in the circuit court. In the interest of completeness, we address those issues below.

In addition to arguing for the application of the fair report privilege, Clifford argued that the press statement was entitled to an innocent construction because it did not name Missner as a participant in the forgery and extortion. Therefore, he argued, it was not actionable as defamation *per se*. The complete press statement reads as follows:

> "Statement of Robert A. Clifford in response to the filing of the Amended Complaint before Judge Donald Suriano in Ficaro v. Betzold, et al., No. 5 L 8474:
>
> As set forth in detail in an Amended Complaint filed in the Cook County Circuit Court today (Tuesday, Dec. 6, 2005), Mike Ficaro has been defamed and greatly wronged as a result of intentional [*sic*] false and scurrilous statements made public by the defendants in an attempt to improperly influence the outcome of some vigorously contested litigation involving tens of millions of dollars.

The Amended Complaint alleges that one or more of the defendants forged the signature of an ex-FBI agent to a fictitious created [*sic*] false and untrue affidavit filed in the federal court proceeding. The complaint further alleges that the affidavit was intended to extort Ficaro and his law firm into settling the litigation by selling out their clients.

The conduct of these attorneys has forced Mr. Ficaro to file this lawsuit in order to respond to the highly derogatory and defamatory statements that are completely without merit. Mike Ficaro is a highly experience [*sic*] former prosecutor and civil litigator who has enjoyed an impeccable reputation both professionally and personally throughout his long career. We know that he will be vindicated in the court of law."

A file-stamped copy of the amended complaint also accompanied the transmission of this press statement.

Whether an allegedly defamatory statement is entitled to an innocent construction in an action for defamation *per se* is a question of law, which we review *de novo*. *Tuite v. Corbitt*, 224 Ill. 2d 490, 503, 511 (2006). Whether the statement was understood to be defamatory or refer to the plaintiff is a question for the jury if the innocent construction issue is resolved in the plaintiff's favor. *Tuite*, 224 Ill. 2d at 503.

The court must consider the allegedly defamatory statement " 'in context, with the words and the implications therefrom given their natural and obvious meaning.' " *Tuite*, 224 Ill. 2d at 503, quoting *Chapski v. Copley Press*, 92 Ill. 2d 344, 352 (1982). The context of the defamatory statements is critical in determining its meaning. *Tuite*, 224 Ill. 2d at 512, citing *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 93-94 (1996). Thus, in determining the context of the defamatory statements, we must read the writing containing the defamatory statement " 'as a whole.' " *Tuite*, 224 Ill. 2d at 512, quoting *John v. Tribune Co.*, 24 Ill. 2d 437, 442 (1962). We then interpret the allegedly defamatory words " 'as they appeared to have been used and according to the idea they were intended to convey to the reasonable reader.' " *Tuite*, 224 Ill. 2d at 504, quoting *Bryson*, 174 Ill. 2d at 93. If the statement may " 'reasonably be interpreted as referring to someone other than the plaintiff[,] it cannot be actionable *per se*.' " *Tuite*, 224 Ill. 2d at 503, quoting *Chapski*, 92 Ill. 2d at 352.

We recognize that *Bryson*, rather than *Chapski*, is the leading supreme court case addressing the identity of the plaintiff in an innocent construction analysis. However, we decline to apply the *Bryson* analysis in this case. First, *Bryson* applies to cases in which the plaintiff has not been named in the defamatory statement. *Bryson*, 174 Ill. 2d at 96-97. As discussed below, the press statement does

identify Missner in this case. Additionally, as this court stated in *Imperial Apparel*, the legal analysis in *Bryson* deviates somewhat from the rule set forth in *Chapski*. *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 367 Ill. App. 3d 48, 57 (2006), *rev'd on other grounds*, 227 Ill. 2d 381 (2008). Therefore, we adhere to the rule stated in *Chapski* and recently reaffirmed in *Solaia Technology*, 221 Ill. 2d at 580-81, to analyze whether the innocent construction rule applies to bar plaintiff's claim for defamation *per se*. *Imperial Apparel*, 367 Ill. App. 3d at 58, *rev'd on other grounds*, 227 Ill. 2d 381 (2008).

Here, Menaker sent the press statement to the Chicago Tribune via e-mail with a file-stamped copy of the Ficaro complaint attached. The opening line of the press statement directed the reader to reference the Ficaro complaint for details about the "intentional [*sic*] false and scurrilous statements made public by the defendants" in attempting to "improperly influence the outcome of some vigorously contested litigation." Additionally, the press statement described the forgery and extortion committed by "one or more of the defendants" named in the Ficaro complaint. In order to understand the allegedly defamatory statements in context, we must examine the press statement together with the Ficaro complaint to which it refers. See *Tuite*, 224 Ill. 2d at 512 (examining allegedly defamatory statements in the context of the entire book in which they were published); see also *Harrison v. Chicago Sun-Times, Inc.*, 341 Ill. App. 3d 555, 570 (2003) ("a newspaper headline and the text of the article to which it refers are to be considered as one document and read together as a whole").

In that context, the press statement is not entitled to an innocent construction. It asserted that "one or more" of the defendants named in the amended Ficaro complaint, filed on a specific date in a specific case pending in the Cook County circuit court, engaged in forgery and extortion. Additionally, it described how the "derogatory and defamatory statements" made by "these attorneys" caused Ficaro to file his lawsuit. The Ficaro complaint named David Missner and William Choslovsky, individually and as employees of their law firm, and Larry Levin, individually and as an employee of his law firm, as well as Betzold and two unnamed individuals, as defendants. Missner, Choslovsky, and Levin are the only "attorneys" accused of engaging in forgery and extortion and making derogatory and defamatory statements about Ficaro. On the contrary, this court found that the allegedly defamatory advertisement in *Imperial Apparel* failed to identify the plaintiffs because it only referred to the plaintiffs by their first names and did not provide any other identifying features, such as the name of the store plaintiffs owned. *Imperial Apparel*, 367 Ill. App. 3d at 58, *rev'd on other grounds*, 227 Ill. 2d 381 (2008).

Although the press statement accuses three individuals of forgery and extortion, we conclude that all of them were adequately identified such that any one of them may claim to have been defamed by the press statement. We again rely on the Restatement (Second) of Torts in support of this conclusion. Section 564A of the Restatement provides that a publisher of defamatory material may be liable to an individual member of a group defamed "if, but only if *** the circumstances of publication reasonably give rise to the conclusion that there is particular reference" to a member of that group. Restatement (Second) of Torts §564A(b), at 167-68 (1977). Specifically, when the defamed group is sufficiently small and the words may reasonably be understood to have personal reference and application to any member of the group, that group member is defamed as an individual. Restatement (Second) of Torts §564A, Comment *b*, at 168 (1977). For example, where a newspaper accuses the officers of a corporation with embezzlement, and there are only four officers, any one of the officers may have been defamed. Restatement (Second) of Torts §564A, Illustration 3, at 169 (1977).

■ Here, the press statement cannot reasonably be interpreted as referring to anyone other than the three attorney-defendants, Missner, Choslovsky, and Levin. See *Tuite*, 224 Ill. 2d at 503; Restatement (Second) of Torts §564A, Illustration 3, at 169 (1977). Indeed, in the subsequent article published in the Chicago Tribune, the reporter quoted directly from the press statement in recounting that " 'one or more of the [libel case] defendants forged the signature of an ex-FBI agent to a fictitious, created, false and untrue affidavit' " and that " '[t]he affidavit was intended to extort Ficaro and his law firm into settling.' " The article then specifically identified "attorneys Larry Levin, David Missner and William Choslovsky" as "defendants in the case." Accordingly, we interpret the press statement as referring to Missner and the other attorney-defendants just as it was interpreted by the reporter to whom it was sent. See *Tuite*, 224 Ill. 2d at 504, quoting *Bryson*, 174 Ill. 2d at 93 (courts " 'interpret the allegedly defamatory words as they appeared to have been used and according to the idea they were intended to convey to the reasonable reader' "). Thus, the press statement is not entitled to an innocent construction and we therefore affirm the circuit court's judgment in rejecting this argument. *Tuite*, 224 Ill. 2d at 503, quoting *Chapski*, 92 Ill. 2d at 352.

■ Clifford also argued that the press statement expressed constitutionally protected opinions, not facts, because "it presents a trial lawyer's litigation position—or opinion—as to his client's claim." A statement that is defamatory *per se*, but not subject to an innocent construction, may nevertheless enjoy constitutional protection under

the first amendment. *Solaia Technology*, 221 Ill. 2d at 581. However, whether Clifford may claim the constitutional protection that he seeks here is an unsettled question. *Imperial Apparel*, 227 Ill. 2d at 400. The first amendment applies to protect a statement of opinion only where: (1) the cause of action is brought by a public official; (2) the cause of action is brought by a public figure; or (3) the cause of action is brought by a private individual against a media defendant. *Imperial Apparel*, 227 Ill. 2d at 398-99. Missner has made no allegation that he is a public official or a public figure, nor is there any contention that Clifford is a media defendant. Our supreme court has yet to determine whether this constitutional protection extends in cases such as this, where a private party has defamed another private party on a matter of public or private concern. *Imperial Apparel*, 227 Ill. 2d at 399; *Green v. Rogers*, 384 Ill. App. 3d 946, 965 (2008). The parties do not discuss whether the first amendment applies under these circumstances and we decline to resolve the issue here.

Nevertheless, even if the constitutional privilege did apply under these circumstances, the defamatory statements at issue in this case are not entitled to protection under the first amendment. An allegedly defamatory statement is only entitled to first amendment protection if it cannot be reasonably interpreted as stating actual fact. *Imperial Apparel*, 227 Ill. 2d at 398; *Solaia Technology*, 221 Ill. 2d at 581. In order to make that determination, we examine the following criteria: (1) whether the statement has a precise and readily understood meaning; (2) whether the statement is verifiable; and (3) whether the statement's literary or social context signals that it has factual content. *Imperial Apparel*, 227 Ill. 2d at 398. The statement is viewed from the perspective of the ordinary reader. *Imperial Apparel*, 227 Ill. 2d at 398.

First, the statements in the press release have a precise and readily understood meaning. They accused Missner and the other attorney-defendants of forgery and extortion, both offenses that an ordinary reader would consider criminal acts. See, *e.g.*, *Krueger v. Lewis*, 342 Ill. App. 3d 467, 471 (2003) (finding that words implicating the plaintiff in a bribery scheme alleged the commission of a crime such that it constituted defamation *per se*); *Solaia Technology*, 221 Ill. 2d at 584-85 (finding that accusing a company of filing lawsuits solely to extract settlements impugns its integrity).

Second, the accusations in the press statement may be objectively verified as being true or false. It is possible to determine whether Marocco personally signed the contested affidavit or whether it was forged, and if so, by whom. Moreover, it is possible to ascertain whether Missner or the other attorney-defendants attempted to use the Marocco affidavit in an extortionate manner to extract a settlement in

the underlying arbitration. See *Imperial Apparel*, 227 Ill. 2d at 402; *Green*, 384 Ill. App. 3d at 964.

Finally, the press statement is replete with details that would indicate to the ordinary reader that it contains factual content. It asserted that it was the statement of Robert A. Clifford and that the statement was made in conjunction with the filing of the attached amended complaint in *"Ficaro v. Betzold, et al.*, No. 5 L 8474," then pending before Judge Donald Suriano in the Cook County circuit court. It explained that the amended complaint was filed in Ficaro's defense as a result of the allegedly illegal acts committed by Missner and the other attorney-defendants. It asserted that the affidavit filed in the bankruptcy proceeding was filed for the very specific purpose of influencing the outcome of a pending litigation in which tens of millions of dollars were at stake. These are very particular accusations and explanations for the filing of the complaint, unlike the "artless, ungrammatical, sophomoric and sometimes nonsensical" allegations at issue in *Imperial Apparel*. See *Imperial Apparel*, 227 Ill. 2d at 401 (where the defamatory statement referred to a retail competitor's clothing store using hyperbolic phrases such as " 'rags,' " " 'flea market style warehouse,' " " 'dried cream cheese,' " " 'low rent,' " " 'a hooker[']s come on,' " and asserted that the plaintiffs had all the integrity of the "Iraqi Information Minister"). Thus, the contents of the press statement, considered in their proper context, could reasonably be interpreted as stating facts and would not be protected by the first amendment, if that privilege were found to apply.

Clifford cited several cases in support of his contention that the press statement contained vague and unverifiable claims that "a reader could conclude *** were part of the posturing between one side and another" in ongoing litigation. However, as we have discussed, a defamatory statement may only be considered a nonactionable opinion if it cannot be construed as stating actual facts about the plaintiff; whether a reader could find an innocent interpretation of the statement is irrelevant. *Imperial Apparel*, 227 Ill. 2d at 397; *Solaia Technology*, 221 Ill. 2d at 581. Nevertheless, the allegedly defamatory statements at issue in the cases cited differ in quality and degree from those contained in the press statement at issue here. *Schivarelli v. CBS, Inc.*, 333 Ill. App. 3d 755, 762 (2002) (finding the statement " 'the evidence seems to indicate that you're cheating the city' " lacked any factual context and did not explain the evidence to which it referred); *Hopewell v. Vitullo*, 299 Ill. App. 3d 513, 517 (1998) (finding the isolated phrase " 'fired because of incompetence' " nonactionable because it was uttered without any specific factual context and was too broad, conclusory, and subjective to be objectively verifiable). See

also *Rose v. Hollinger International, Inc.*, 383 Ill. App. 3d 8, 13-17 (2008) (summarizing cases in which courts have found actionable and nonactionable opinion in defamation cases). Here, the press statement provided specific details about the filing of the Ficaro complaint and the rationale for doing so. Thus, it could reasonably be interpreted as stating actual facts about Missner's involvement in that context. Therefore, we affirm the circuit court's judgment on this issue.

The remaining points in Clifford's petition for rehearing attempt to reargue the positions asserted in his appellee's brief. We have addressed those arguments in the foregoing opinion and decline to address them further. Accordingly, for all of these reasons, we affirm in part and reverse in part and remand for further proceedings.

Affirmed in part and reversed in part; cause remanded.

J. GORDON and CAHILL, JJ., concur.