# Illinois Official Reports

## Appellate Court

---

**_Wesly v. National Hemophilia Foundation_, 2020 IL App (3d) 170569**

---

| | |
|---|---|
| Appellate Court Caption | OSVALDO H. WESLY, M.D., Plaintiff-Appellee, v. THE NATIONAL HEMOPHILIA FOUNDATION; CRAIG M. KESSLER, M.D.; GEORGETOWN UNIVERSITY; MICHAEL TARANTINO, M.D.; KOLLET KOULIANOS; THE BLEEDING AND CLOTTING DISORDERS INSTITUTE, an Illinois Not-for-Profit Corporation; BOB ROBINSON; and BLEEDING DISORDERS ALLIANCE ILLINOIS, an Illinois Not-for-Profit Corporation, Defendants (Craig M. Kessler, M.D., Defendant-Appellant). |
| District & No. | Third District<br>No. 3-17-0569 |
| Filed | March 9, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 15-L-188; the Hon. Michael P. McCuskey, Judge, presiding. |
| Judgment | Certified question answered; judgment affirmed. |
| Counsel on Appeal | Kevin W. Doherty and Ryan A. Danahey, of Doherty & Progar LLC, of Chicago, for appellant.<br><br>Paul R. Vickrey and Gretchen L. Schmidt, of Vitale, Vickrey, Niro & Gasey LLP, of Chicago, and Timothy J. Rigby, of Hart, Southworth & Witsman, of Springfield, for appellee. |

PRESIDING JUSTICE LYTTON delivered the judgment of the court, with opinion.
Justice O'Brien concurred in the judgment and opinion.
Justice McDade concurred in part and dissented in part, with opinion.

**OPINION**

¶ 1        Plaintiff, Osvaldo H. Wesly, M.D., filed a defamation complaint in Peoria County against defendant, Craig M. Kessler, M.D., and several others. Kessler, who lives and works in the Washington, D.C., area, filed a motion to dismiss plaintiff's complaint, asserting that the Peoria County circuit court lacked personal jurisdiction over him. The trial court denied the motion and certified the following question: "Can the Circuit Court properly exercise personal jurisdiction in a tort action over Dr. Kessler under the Illinois long-arm statute, and if so, can such an exercise of personal jurisdiction satisfy the requirements for due process?" We answer the certified question in the affirmative and affirm the trial court's denial of Kessler's motion to dismiss.

¶ 2                                            FACTS
¶ 3        Plaintiff, a physician, became the medical director of the Comprehensive Bleeding Disorders Center in Peoria in 2010. On September 20, 2014, he received the Physician of the Year Award from the National Hemophilia Foundation (NHF). A few days later, NHF issued an e-mail to all of its members stating that it recently discovered that "*documents submitted* to it in connection with its NHF Physician of the Year Award to Dr. Osvaldo H. Wesly had *significant inaccuracies* related to Dr. Wesly's background, qualifications and experience." (Emphases in original). The same message was posted on NHF's website and disseminated to other sources, including at least one television station in Peoria.

¶ 4        Plaintiff filed a complaint against NHF and seven other defendants, including Craig M. Kessler, who is the director of the coagulation laboratory at Georgetown University and serves as a volunteer with NHF. Count I of plaintiff's complaint alleged defamation against Kessler.

¶ 5        In the course of discovery, plaintiff obtained two e-mails written by Kessler to Michael Tarantino, a physician and medical director of the Bleeding and Clotting Disorders Institute in Peoria, on September 21, 2014. Kessler sent his first e-mail to Tarantino at 7:37 a.m. on September 21, 2014. It states in pertinent part:

           "Dear Mike,

               I am at the NHF Board Meeting this morning and spoke to Val, who indicated that the Physician of the Year Award was given to an individual from your area who apparently has turned out to have some background difficulty. Val indicated that the nomination was well supported but apparently the committee (an in-house group) was not aware of some of the legal difficulties he has been associated with. I have suggested to Val that if the accusations against this individual are still active and if he is under OIG investigation, that his ethical situation should invalidate his award. Are you able to provide any information about this off line?

               ***

Furthermore, I have indicated to Val and the NHF the importance of supporting you and your HTC [hemophilia treatment center] and the value you bring to the *** hemophilia community. Clearly, they are collectively embarrassed by this and are now looking into the vetting process for the nominees. ***

Personally, I want to apologize since I would never have let this occur and I believe [it] sends an inappropriate message to the community. Please let me know your thoughts and I will keep you apprised of the situation from my perspective."

Kessler sent his second e-mail to Tarantino at 7:34 p.m. the same day. It provides in pertinent part:

"Dear Mike,

I am so sorry that I was not aware of this situation. I was not part of the nomination committee; however, I am going to discuss with Val that we should withdraw the award based on the false credentials and I will ask that the CV which was sent to NHF as part of the vetting process be retrieved and adjudicated for veracity. If untrue, I will demand that Val withdraw the award. I will be available to you at any time. Please feel free to call me *** at any time. Be assured that this [*sic*] will not let this egregious situation remain and that the vetting process will be tightened up. I will keep you apprised. I agree that this is very embarrassing to NHF."

There is no dispute that Kessler sent the e-mails from outside Illinois or that Tarantino opened and read the e-mails in Illinois.

¶ 6    Kessler filed a motion to dismiss the defamation claim against him, arguing that the Peoria County circuit court lacked personal jurisdiction over him. The trial court denied Kessler's motion to dismiss and made a finding pursuant to Illinois Supreme Court Rule 308(a) (eff. Jan. 1, 2015), certifying the following question: "Can the Circuit Court properly exercise personal jurisdiction in a tort action over Dr. Kessler under the Illinois long-arm statute, and if so, can such an exercise of personal jurisdiction satisfy the requirements for due process?"

¶ 7                         ANALYSIS

¶ 8    Illinois Supreme Court Rule 308(a) (eff. Jan. 1, 2015) provides in relevant part:

"When the trial court, in making an interlocutory order not otherwise appealable, finds that the order involves a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, the court shall so state in writing, identifying the question of law involved."

The scope of review in an interlocutory appeal brought under Rule 308 is limited to the certified question. *Spears v. Association of Illinois Electric Cooperatives*, 2013 IL App (4th) 120289, ¶ 15. A certified question is governed by Rule 308 and reviewed *de novo*. *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 57-58 (2007).

¶ 9    Illinois courts may assert specific personal jurisdiction over a nonresident defendant if (1) a specific statutory provision of the Illinois long-arm statute has been satisfied and (2) the due process requirements of the United States and Illinois Constitutions have been met. *Russell v. SNFA*, 2013 IL 113909, ¶ 29.

## I. Long-Arm Statute

The Illinois long-arm statute provides in relevant part:

> "(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:
>
> > (1) The transaction of any business within this State;
> >
> > (2) The commission of a tortious act within this State;
>
> > * * *
>
> (c) A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209 (West 2016).

The tort of defamation occurs where the defamatory statements are published. See *Hanson v. Ahmed*, 382 Ill. App. 3d 941, 942 (2008). Publication is the act by which defamatory matter is conveyed to a third party. *Missner v. Clifford*, 393 Ill. App. 3d 751, 763 (2009).

Here, under section 2-209(a)(2) of the Illinois long-arm statute, plaintiff has asserted jurisdiction over Kessler because he sent the statements to Tarantino, who received and read them in Illinois. Publication of Kessler's statements, therefore, occurred in Illinois. See *Hanson*, 382 Ill. App. 3d at 943; *Missner*, 393 Ill. App. 3d at 763. Kessler's alleged defamation was in Illinois and subject to Illinois's jurisdiction under the long-arm statute. See 735 ILCS 5/2-209(a)(2) (West 2016).

Plaintiff also asserted jurisdiction over Kessler under section 2-209(c) of the Illinois long-arm statute, commonly referred to as the "catch-all provision." Section 2-209(c) "effectively collapses the jurisdictional inquiry into the single issue of whether a defendant's Illinois contacts are sufficient to satisfy federal and Illinois due process." *Russell*, 2013 IL 113909, ¶ 30. When a plaintiff argues that personal jurisdiction is proper under section 2-209(c), the sole issue before the court is whether the nonresident defendant's connection or contact with Illinois is sufficient to satisfy federal and Illinois due process. *Id.*

## II. Due Process

Both the Illinois Constitution and the United States Constitution contain independent guarantees of due process. Ill. Const. 1970, art. I, § 2; U.S. Const., amend. XIV. "[I]t is generally true that, when federal due process concerns regarding personal jurisdiction are satisfied, so are Illinois due process concerns." *Aasonn, LLC v. Delaney*, 2011 IL App (2d) 101125, ¶ 13.

### A. Federal Due Process

Three criteria are considered in determining whether federal due process requirements have been satisfied: (1) whether the nonresident defendant had "minimum contact" with the forum state such that there was "fair warning" that the nonresident defendant may be brought into a forum court, (2) whether the action arose out of or related to the defendant's contacts with the forum state, and (3) whether it is reasonable to require the defendant to litigate in the forum

state. *Kalata v. Healy*, 312 Ill. App. 3d 761, 768-69 (2000).

¶ 19                                    1. Minimum Contacts

¶ 20    Under federal due process requirements, a nonresident defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A nonresident defendant must have fair warning that his activities may subject him to suit in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citing *Shaffer v. Heitner*, 433 U.S. 186, 218 (Stevens, J., concurring)). The requirements of minimum contacts and fair warning are satisfied if the defendant has "purposefully directed" his activities at an Illinois resident or "purposefully derived benefits from his interstate activities." *Kalata*, 312 Ill. App. 3d at 769.

¶ 21    Where the plaintiff's claim is for an intentional tort, the inquiry focuses on whether the conduct underlying the claim was purposely directed at the forum state. *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010). "[T]he point of the purposeful-direction requirement is to 'ensure that an out-of-state defendant is not bound to appear to account for merely "random, fortuitous, or attenuated contacts" with the forum state.' " *Id.* (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008), quoting *Rudzewicz*, 471 U.S. at 475).

¶ 22    We must decide whether a nonresident sending defamatory e-mails to an Illinois resident has sufficient contacts to be sued in an Illinois court. No Illinois court has considered this issue. However, several federal courts have found that e-mails can meet the requirements of minimum contacts and fair warning. See *Campbell v. Campbell*, 262 F. Supp. 3d 701 (N.D. Ill. 2017); *Strabala v. Zhang*, 318 F.R.D. 81 (N.D. Ill. 2016). We agree and believe defamatory e-mails, like telephone calls or letters, can be the basis of defamation claims, provided that the strictures of due process are met.

¶ 23    In *Campbell*, the plaintiff sued her ex-husband for defamation after he sent three e-mail messages from his home in Minnesota to plaintiff's employer in Illinois, Inland Real Estate. The court found that Illinois had personal jurisdiction over the defendant, stating:

> "There can be no question that defendant acted intentionally in composing and sending the emails. It is likewise clear that defendant's conduct was expressly aimed at Illinois. He sent the emails directly to Inland, which is located in Illinois. And defendant knew (or at least intended) that plaintiff would be injured in Illinois." *Campbell*, 262 F. Supp. 3d at 705-06.

The court rejected the defendant's contention that the e-mails could have been opened anywhere, stating: "Inland was not one of a long list of email recipients located throughout the country. Defendant sent the messages in question specifically and *** exclusively to Inland. His contact with Illinois was not fortuitous and was entirely within his control." *Id.* at 706. The court also found that requiring defendant to defend himself in Illinois did not offend traditional notions of fair play and substantial justice, stating: "[T]here was nothing fortuitous about where defendant's emails were sent to or received. An individual who sends to another person's employer messages like the ones at issue here can reasonably expect to be haled into court where the messages were sent." *Id.* at 708.

In *Strabala*, the plaintiff alleged that the defendants, who were Chinese citizens, sent defamatory e-mails from China to several of the plaintiff's business and professional associates in Chicago, where his business was located. 318 F.R.D. at 88. The court found these e-mails were sufficient to invoke personal jurisdiction over the defendants in Illinois, explaining:

> "Strabala alleges that Defendants targeted specific individuals who they knew had a business relationship to Strabala, and they did so with the intent, purpose and effect of defaming him to those individuals. 'Concluding that intentionally tortious emails cannot give rise to personal jurisdiction would insulate from liability a ubiquitous form of communication and entirely negate the otherwise permissible exercise of jurisdiction over defendants who purposefully directed their activities at a forum state without entering the state.' [Citation.] Defendants purposefully aimed their conduct at Illinois by seeking to damage Strabala's reputation in Illinois where the e-mail recipients were located. [Citations.] Thus, Defendants' relationship to Illinois cannot be said to be 'entirely fortuitous' and 'dependent wholly on activities out of [their] control.' [Citation.]" *Id.* at 109-10.

The court stated that when a defamatory e-mail is involved, the most important question for jurisdictional purposes is "where the person or entity who is targeted by the email is based." *Id.* at 112; see also *Rusinowski v. Village of Hillside*, 835 F. Supp. 2d 641, 654 (N.D. Ill. 2011) ("In considering the jurisdictional consequences of phone calls or Internet contact, Illinois courts consider whether a defendant's actions deliberately and consciously intruded into Illinois.").

¶ 25    In *Tamburo*, the defendants published allegedly false and defamatory statements about the plaintiff, a business owner, in blast e-mails and on public websites knowing that the plaintiff lived and operated his business in Illinois. 601 F.3d at 706. The Seventh Circuit found that minimum contacts with Illinois existed where the nonresident defendants made defamatory statements about an Illinois resident with the intent to harm him in his home state. *Id.* The court ruled that "although they acted from points outside the forum state, these defendants specifically aimed their tortious conduct at Tamburo and his business in Illinois with the knowledge that he lived, worked, and would suffer the 'brunt of the injury' there." *Id.*

¶ 26    In this case, plaintiff has alleged that Kessler purposely directed his conduct in Illinois establishing sufficient minimum contacts to support personal jurisdiction over him. Kessler sent the two e-mails to an Illinois resident about another Illinois resident. In his first e-mail, Kessler referred to plaintiff as being from Tarantino's "area," that is, Peoria. He knew that both plaintiff and Tarantino lived in Illinois. Kessler also knew that plaintiff and Tarantino were directors of medical clinics for bleeding disorders in Peoria. Because the e-mails were published in Illinois, where plaintiff lives and works, Kessler could reasonably anticipate being sued in Illinois. See *Campbell*, 262 F. Supp. 3d at 708; *Strabala*, 318 F.R.D. at 109-10. Kessler's "contact with Illinois was not fortuitous and was entirely within his control." See *Campbell*, 262 F. Supp. 3d at 706. Exercising personal jurisdiction over Kessler with regard to plaintiff's defamation claim does not offend traditional notions of fair play and substantial justice.

¶ 27                                  2. Cause of Action

¶ 28    Next, we must consider whether plaintiff's cause of action arose out of Kessler's contacts with this state. "For specific jurisdiction to exist, the ligation must result from alleged injuries

- 6 -

that arose out of or related to defendant's in-state activities." *M.M. v. GlaxoSmithKline LLC*, 2016 IL App (1st) 151909, ¶ 51.

¶ 29 Plaintiff's complaint against Kessler alleges defamation. Kessler made his statements about plaintiff in the two e-mails he sent to Tarantino in Illinois. Plaintiff alleges that his injuries arose out of and were directly related to Kessler's e-mails. Accordingly, Kessler's contacts with Illinois give rise to plaintiff's cause of action, satisfying this requirement.

¶ 30                                    3. Reasonableness of Forum

¶ 31 Finally, we consider whether it is reasonable for Illinois to exercise personal jurisdiction over Kessler. To determine reasonableness, courts consider (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in obtaining relief; (4) the interest of the affected forums, including the forum state, in the most efficient resolution of the dispute; and (5) the interest of the affected forums in advancing substantive social policies. *Soria v. Chrysler Canada, Inc.*, 2011 IL App (2d) 101236, ¶ 36 (citing *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 113 (1987)). When a plaintiff has established that the defendant purposely directed his activities at the forum state, the defendant must present a compelling case that litigating the dispute there would be unreasonable. *Commerce Trust Co. v. Air 1st Aviation Cos.*, 366 Ill. App. 3d 135, 146 (2006). Compelling cases are limited to those rare situations where Illinois's interests in adjudicating the dispute are clearly outweighed by the burden of subjecting the defendant to litigation in Illinois. *Keller v. Henderson*, 359 Ill. App. 3d 605, 618 (2005).

¶ 32 "Illinois has a strong interest in providing a forum for its residents to vindicate harms from out-of-state actors." *Rusinowski*, 835 F. Supp. 2d at 655; see also *Tamburo*, 601 F.3d at 709 ("Illinois has a strong interest in providing a forum for its residents and local businesses to seek redress for tort injuries suffered within the state and inflicted by out-of-state actors."). In *Tamburo*, the court found it was reasonable for the plaintiff's suit against the nonresident defendants to proceed in Illinois, stating:

> "Although Tamburo could have sued the individual defendants in their home jurisdictions, that would have been cumbersome and impractical; the American defendants live in separate states and Dworkin lives in Canada. Neither Canada nor any of the states where the American defendants live (Colorado, Michigan, or Ohio) has a substantial interest at stake here. And it would be unreasonable to expect Tamburo to file separate lawsuits to give each defendant the privilege of defending this litigation in his or her home state when jurisdiction is otherwise proper in Illinois. Under these circumstances, it is far more reasonable to conclude that the defendants should anticipate being haled into court in Tamburo's home state of Illinois than a court in a codefendant's home jurisdiction. A single suit in Illinois also promotes the most efficient resolution of these claims." *Tamburo*, 601 F.3d at 709-10.

¶ 33 Here, plaintiff is an Illinois resident, seeking redress for injuries he allegedly suffered in this state as the result of a tort committed by an out-of-state defendant. Weighing the relevant factors, we find as follows. First, having to litigate in Illinois is a burden on Kessler, who lives in the Washington, D.C., area. Second, Illinois has a substantial interest in providing plaintiff, its citizen, with a convenient forum to litigate. See *Bombliss v. Cornelsen*, 355 Ill. App. 3d 1107, 1116 (2005). There is no question that Illinois, the state where plaintiff lives and works, is the most convenient forum for him to bring his suit. Third, plaintiff has a strong interest in

obtaining relief for the injuries Kessler allegedly caused in Illinois. Fourth, Illinois provides the most efficient forum for a resolution of plaintiff's claims. Although plaintiff could have sued each defendant in his or its home jurisdiction, it would have been cumbersome and impractical for plaintiff to do so, as he originally sued a total of eight defendants from at least three different states. Plaintiff should not be expected to file separate lawsuits in three or more foreign jurisdictions solely for the convenience of defendants. See *Tamburo*, 601 F.3d at 709. Fifth, Illinois has a strong interest in advancing the substantive social policy of compensating victims for torts occurring in Illinois. *Soria*, 2011 IL App (2d) 101236, ¶ 37.

¶ 34        While the first factor weighs against Kessler being sued in Illinois, the remaining factors outweigh any inconvenience Kessler may experience by having to defend himself in a foreign jurisdiction. Because Kessler purposely directed activities at Illinois, he had to present a compelling case as to why litigating this action in Illinois would impose an undue burden on him. See *Commerce Trust Co.*, 366 Ill. App. 3d at 146. He has failed to do so.

¶ 35                                    B. Illinois Due Process

¶ 36        Having found that federal due process is satisfied by asserting jurisdiction over Kessler, we now consider whether Illinois due process is also satisfied. Under the Illinois Constitution's due process clause, "[j]urisdiction is to be asserted only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood*, 141 Ill. 2d 244, 275 (1990).

¶ 37        Asserting personal jurisdiction over Kessler in Illinois does not violate Illinois due process. As in federal due process claims, it was foreseeable that plaintiff's injuries, resulting from Kessler's allegedly defamatory statements, would be felt primarily in Illinois, where Kessler sent his e-mails and where plaintiff resides. See *Campbell*, 262 F. Supp. 3d at 705-06; *Strabala*, 318 F.R.D. at 109-10; *Tamburo*, 601 F.3d at 706. It is not unfair, unjust, or unreasonable to require Kessler to defend himself in Illinois.

¶ 38                                    C. Defendant's Arguments

¶ 39        Kessler argues that we should rely on the Illinois case of *Hanson*, 382 Ill. App. 3d 941, to find that personal jurisdiction is lacking here. In *Hanson*, the First District ruled that two telephone calls initiated by an insurance claims adjuster in Illinois did not confer an Illinois court with jurisdiction over two Missouri defendants. The court explained:

> "The defendants took no affirmative action to conduct any activities in Illinois; they did not initiate the telephone calls and did nothing to invoke the benefits and protection of the laws of Illinois. [Citation.] The defendants' participation in the two telephone conversations represent extremely attenuated contacts with Illinois that resulted from the unilateral activity of the Allstate claims adjuster." *Id.* at 945.

Unlike the telephone calls in *Hanson*, which were initiated by someone other than the defendants, the e-mails in this case were initiated by Kessler to someone he knew lived in Illinois. Kessler "deliberately and consciously intruded into Illinois" and could expect to have to defend his actions in an Illinois court. See *Rusinowski*, 835 F. Supp. 2d at 654-55.

¶ 40        Kessler also relies on our decision in *Bombliss*, 355 Ill. App. 3d 1107, to support his position that the trial court erred in denying his motion to dismiss. In *Bombliss*, we found that

Illinois had personal jurisdiction over the nonresident defendants who sold dogs to the Illinois plaintiffs. There, the defendants conducted contract negotiations in Illinois, maintained a commercial website, and used chat rooms to reach potential customers, including the plaintiffs. In *dicta*, we stated: "If the only contacts defendants had with Illinois consisted of a single telephone call and one mailing in connection with their sale of the two pups to plaintiffs, we might agree with the trial court that plaintiffs failed to establish sufficient minimum contacts to satisfy due process." *Id.* at 1113-14.

¶ 41 Kessler invites us to rely on this *dicta* to find that the trial court lacked personal jurisdiction over him. We decline the invitation. Kessler sent the two e-mails to Tarantino knowing that he and plaintiff lived and worked in Illinois. Kessler purposely directed activities at Illinois, and those activities are the basis of plaintiff's suit against him. It does not violate due process to require Kessler to defend his actions in Illinois.

¶ 42                                    CONCLUSION

¶ 43 We answer the certified question in the affirmative and affirm the judgment of the circuit court of Peoria County denying Kessler's motion to dismiss.

¶ 44 Certified question answered; judgment affirmed.

¶ 45 JUSTICE McDADE, concurring in part and dissenting in part:

¶ 46 The majority has found that the two e-mails sent from Washington, D.C., by defendant, Dr. Craig Kessler, to Dr. Michael Tarantino in Peoria, Illinois, are sufficient to satisfy the requirements of the Illinois long-arm statute (735 ILCS 5/2-209 (West 2016)) and of due process under the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV) and the Illinois Constitution (Ill. Const. 1970, art. I, § 2), thereby vesting Illinois courts with specific personal jurisdiction over this nonresident defendant.

¶ 47 The majority's first finding is that plaintiff has alleged defamation, an intentional tortious act under Illinois law, and has, therefore, stated a claim that satisfies section 2-209(a)(2) of the long-arm statute. Although the two e-mails at issue are incorporated into the complaint and form a part of plaintiff's allegations of fact (see 735 ILCS 5/2-606 (West 2016) ("the exhibit constitutes a part of the pleading for all purposes")), although their plain language appears to flatly contradict the claim that the e-mails contain affirmative false and defamatory statements, and although application of Illinois's "innocent construction rule" (see, *e.g.*, *Green v. Rogers*, 234 Ill. 2d 478, 499-500 (2009)) would, I believe, compel a finding that the e-mails are not defamatory, I can concur with the first finding on the basis that we must, on a motion to dismiss, take the claim as true.

¶ 48 I do not, however, agree with the second finding that the complaint satisfies due process requirements under either the state or federal constitutions. I reiterate those requirements here for purposes of cohesiveness.

¶ 49 An assertion of specific personal jurisdiction satisfies federal due process guarantees so long as the defendant has sufficient "minimum contacts" with the forum state such that maintaining an action in the forum state does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts must be based on acts by which the defendant purposely avails himself of the privilege

of conducting activities within the forum state, thereby invoking the benefits and protections of its laws. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985). The defendant's conduct must reflect a connection to the forum state such that the defendant would reasonably anticipate being haled into the state's court. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Specific personal jurisdiction is appropriate when (1) the defendant has purposely directed his activities at the forum state or purposely availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities. *Burger King Corp.*, 471 U.S. at 472. The proper focus of the minimum contacts inquiry in intentional tort cases is the relationship among the defendant, the forum, and the litigation. *Walden v. Fiore*, 571 U.S. 277, 291 (2014). Due process requires that a defendant be haled into court in a forum state based on his own affiliation with the state, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the state. *Id.* at 286.

¶ 50    The majority has found that Kessler intentionally reached into Illinois to speak specifically with Tarantino and, therefore, his contact was neither random nor fortuitous. While I agree that that conclusion may be plausible, I believe, when considered in context, it is actually incorrect. In addition, I do not agree that this contact equated to either the "activity in" or "affiliation with" the *state* that is contemplated by *World-Wide Volkswagen Corp.*, *Burger King Corp.*, or *Walden*.

¶ 51    The two e-mails at issue in this appeal are quoted in pertinent part in the majority's decision (*supra* ¶ 5). I believe the following quotes constitute the critical language in the two e-mails. The first e-mail stated: "I am at the NHF Board Meeting this morning." "Val *** indicated that the Physician of the Year Award was given to an individual *from your area who apparently has turned out to have some background difficulty*." (Emphasis added.) "I have suggested to Val that *if the accusations against this individual are still active and if he is under OIG investigation*, that his ethical situation should invalidate his award." (Emphasis added.) "Are you able to provide any information about this *off line*?" (Emphasis added.) "Clearly [Val and the NHF] are collectively embarrassed by this and are now looking into the vetting process for the nominees." "Please let me know your thoughts and I will keep you apprised of the situation from my perspective." The second e-mail, sent the same day, expresses dismay about information he has apparently received from Tarantino in the interim and says, "I am going to discuss with Val that we should withdraw the award based on the false credentials and *I will ask that the CV which was sent to NHF as part of the vetting process be retrieved and adjudicated for veracity. If untrue, I will demand that Val withdraw the award*." (Emphasis added.) "I agree that this is very embarrassing to NHF."

¶ 52    The gist of these e-mails is that Kessler is a member of the NHF board and is therefore one of the stewards of, among other things, its reputation. The board has learned that it may have chosen the recipient of its physician of the year award without full disclosure of pertinent, potentially dispositive information. Kessler thinks if the information they have been given is accurate, the appropriate response of NHF would be to invalidate the award. Because Tarantino and the award recipient (Wesly) live in the same area and practice in the same specialty, he is reaching out to him for information and would like him to respond off-line, presumably to avoid any disclosure of or embarrassment due to the situation.

¶ 53    I believe these two e-mails can be fairly, accurately, and appropriately characterized as "due diligence." Thus, for me, the pertinent question becomes whether inquiries—by e-mail,

the postal service, telephone, or face-to-face—requesting information necessary to carry out legitimate decision-making processes can constitute "minimum contacts" sufficient to subject the fact seeker to the jurisdiction of the courts of Illinois (and, more generally, the courts of any and all states from which such information is sought). My answer to that question would be "no," even where soliciting the information requires disclosure, but not adoption, of a negative allegation prompting the inquiry.

¶ 54 *Burger King Corp.* requires, first, acts by which the defendant purposefully avails himself of the privilege of conducting activities within a state that would entitle him to the benefits and protections of its laws. E-mails seeking information about candidates for employment or awards are addressed to an individual within the state, not the state itself, and the senders would not be invoking such protection. Second, as is required by *World-Wide Volkswagen Corp.*, such correspondents would not reasonably anticipate—if they contemplated the issue at all— that their inquiries would subject them to the state's jurisdiction or that they could be sued for those inquiries in that state. Kessler's two e-mails do not appear to satisfy either of those analytical prongs.

¶ 55 I believe the correct legal interpretation in this case is the one set out in *Walden*, a unanimous decision issued by the United States Supreme Court in 2014. The facts of that case are vastly different from those present in this case, but the principles articulated by the Court are equally applicable in both situations.

¶ 56 The *Walden* Court began by setting the stage for its "minimum contacts" analysis and then applying the "[t]wo related aspects of this necessary relationship" as follows in pertinent part:

> "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State. Two related aspects of this necessary relationship are relevant in this case.
>
> First, the relationship must arise out of contacts that the defendant *himself* creates with the forum State. [Citation.] Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties. [Citation.] We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State. [Citation.] *** Put simply, however significant the plaintiff's [or third party's] contacts with the forum may be, those contacts cannot be decisive in determining whether the defendant's due process rights are violated. [Citation.]
>
> Second, our minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there. [Citations.] Accordingly, we have upheld the assertion of jurisdiction over defendants who have purposefully reach[ed] out beyond their State and into another by, for example, entering a contractual relationship that envisioned continuing and wide-reaching contacts in the forum State [citation], or by circulating magazines to deliberately exploi[t] a market in the forum State [citation]. And although physical presence in the forum is not a prerequisite to jurisdiction [citation], physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact. [Citation.]" (Emphasis in original and internal quotation marks omitted.) *Walden*, 571 U.S. at 284-85.

¶ 57    The Court then went on to demonstrate that the relevance of the contact is only the first step; there must also be the minimum contacts.

> "But the plaintiff [or a third party] cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him. [See *Burger King Corp.*, 471 U.S. at 478] ('If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot'); [citation]. To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction. [Citation.] Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State. [Citation.]" (Emphasis in original.) *Id.* at 285-86.

The Court then advised that these same principles apply when the claims, as here, involve intentional torts. *Id.* at 286.

¶ 58    Summing up, Kessler's e-mails to Tarantino are "relevant" contacts with Illinois, but for them to constitute minimum contacts sufficient to satisfy due process requires a showing that Kessler was reaching into the state not merely to communicate with Tarantino but to actually forge contacts or relationships with the state itself. Within that analytical framework, "random, fortuitous, or attenuated" appear to describe contact incidental to a person's citizenship as opposed to a purposeful attempt to get a toehold within the state. Viewed in light of the relevant case law, Kessler's e-mails were sent, not for the purpose of establishing contacts with the state of Illinois itself but, rather, to make contact with a source of necessary information who happens to reside here. I would find Illinois cannot exercise jurisdiction.