2024 IL App (1st) 231524

No. 1-23-1524

Opinion filed September 16, 2024.

First Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| KENNETH S. BRODY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2022 L 009869 |
| | ) | |
| STEVEN L. HOCH and KAREN L. MANSFIELD, | ) | The Honorable |
| | ) | Mary Colleen Roberts, |
| Defendants-Appellees. | ) | Judge Presiding. |

PRESIDING JUSTICE LAVIN delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Kenneth Brody, a Tennessee resident, brought a defamation *per se* action against defendants, Steven Hoch and Karen Mansfield, both residents of California. Plaintiff alleged that defendants sent five defamatory letters about him to the Chief Executive Officer (CEO), as well as current and former partners of his employer, DRW Holdings LLC (DRW), an Illinois financial firm. Defendants subsequently moved, successfully, to dismiss the case for lack of personal jurisdiction. Specifically, the court below held that it lacked personal jurisdiction over defendants because they did not have sufficient minimum contacts with Illinois and it would

be unreasonable to exercise jurisdiction over them, given that plaintiff was also not a resident of the forum state. For the reasons that follow, we reverse the lower court's judgment and remand for further proceedings consistent with this decision.

¶ 2                                                    I. BACKGROUND

¶ 3      Briefly stated, Steven Hoch was involved in spousal support proceedings in California with his ex-wife, Susan Hoch. During those proceedings, Steven discovered that plaintiff transferred over five thousand dollars to Susan in June 2019. According to plaintiff, he loaned Susan the money to cover a debt owed to her by a friend, Milli Ta. Plaintiff, however, had never met either Susan or Ta; instead, a mutual acquaintance of plaintiff and Ta had arranged the loan transfer.[1]

¶ 4      During the spousal support proceedings, Karen Mansfield, who is in a romantic relationship with Steven, mailed a signed settlement offer to Susan concerning Steven's spousal support obligations that contained, among other things, statements indicating that Mansfield had personal knowledge of Susan's finances.[2] Mansfield gave Susan until the end of February 2022 to accept her settlement offer.

¶ 5      Less than two weeks after the offer expired, five identical, anonymous letters were sent to DRW's head office, located at 540 West Madison Street in Chicago, Illinois. The letters were addressed to the CEO and founder of DRW, as well as current and former DRW partners (herein

---

[1]Plaintiff's complaint alleged that Ta was experiencing financial difficulties after her husband died, leaving Ta and their children with "little financial resources." Given Ta's financial situation, which was explained to plaintiff by their mutual acquaintance, plaintiff "agreed to provide some financial support" to Ta. To support Ta, plaintiff directly paid Susan a $5971.40, debt owed to her by Ta. According to plaintiff, it was a "charitable contribution to Ms. Ta, a friend of his acquaintance, in difficult financial straits."

[2]According to plaintiff, Mansfield "would have no reason to know of" Susan's private financial information "but for the production of [her] bank account statements in connection with the spousal support proceedings."

after referred to as "DRW partners"). The letters claimed that plaintiff, a DRW senior executive, was engaged in money laundering, wire fraud, unlicensed money transmitting, embezzlement, and tax evasion. The letters also contained Susan's social security and bank account numbers. The letters recommended that the allegations contained therein be taken seriously and that plaintiff be investigated concerning said allegations. Specifically, the letters stated, in relevant part:

> "I am contacting you because I believe you need to investigate Kenneth Saul Brody, Senior fixed income derivative trader with DRW Trading. ***
>
> I believe he has bene [*sic*], and may still be, involved in international money laundering, wire fraud, unlicensed money transmitting, and may even be embezzling from clients. He has funneled funds through Susan Beatty Hoch of Los Angeles, California and Millie Ta of Costa Mesa, California[.]
>
> Some funds have been wire transferred to 'Zulu Trading'.
>
> Susan Hoch is at ***
>
> Social Security Number: ***
>
> She has used Wells Fargo bank account: ***, among others[.]
>
> I believe there has been tax evasion as well, on the part of some of the parties involved.
>
> I hope this information is helpful and taken seriously."

¶ 6     Plaintiff, thereafter, had two of the five anonymous letters DNA tested and examined by a document examiner. The DNA matched the DNA found on Mansfield's signed settlement offer to Susan. Specifically, Beth Chrisman, a certified questioned document examiner, inspected the letters sent to DRW partners Glenn Scwartz and Fred Schuster, as well as Mansfield's settlement

letter to Susan. Chrisman concluded it was "probable" that the author of the three letters was the same person who authored the settlement letter—namely, Mansfield.[3] Moreover, the DNA testing, conducted by Technical Associates, Inc., examined the letters sent to DRW partners Jeffrey Levoff and Glenn Scwartz, along with Mansfield's settlement letter. The test revealed it was "extremely likely" that the DNA found on the three letters belonged to the same individual who authored the settlement letter (again, namely Mansfield) and that the odds of another person having the same DNA profile were 1 in 16.9 septillion.

¶ 7    In early November 2022, plaintiff filed the instant complaint alleging that defendants had sent the five anonymous letters to the DRW partners and that the statements within constituted defamation *per se*. The complaint further alleged that defendants' defamatory statements imputed that plaintiff had committed a crime; lacked integrity in his duties; prejudiced him in his profession; were false; were published, without privilege; were made, even though defendants knew they were false or with "reckless disregard for their truth"; and were so "obviously and materially harmful" that injury to plaintiff's reputation could be presumed.

¶ 8    The following year, defendants moved to dismiss plaintiff's complaint against them pursuant to section 2-619.1 (735 ILCS 5/2-619.1 (West 2020)) of the Illinois Code of Civil Procedure (Code). Defendants asserted that the court lacked specific personal jurisdiction over them, as nonresidents, because there was neither public policy nor efficiency in hearing the case in Illinois. Defendants further asserted that they did not have minimum contacts with Illinois and had no fair warning that they could be subject to the jurisdiction of the forum state.[4]

---

[3]According to Chrisman, "probable" meant that the evidence strongly indicated the known writer but was not enough to constitute virtual certainty.

[4]In their section 2-619.1 dismissal motion, defendants also asserted that plaintiff's complaint failed to state a proper claim for defamation *per se*, particularly against Steven. Because the parties do not challenge that issue on appeal, we will not address it here. It bears noting, however, that plaintiff's

¶ 9     In response, plaintiff asserted the court had specific personal jurisdiction over defendants because the Illinois long-arm statute (*id.* § 2-209(a)(2)) and due process were satisfied. More specifically, the long-arm statute was satisfied because defendants allegedly committed an intentional tort in Illinois when they sent the defamatory letters to DRW partners located in that state. In doing so, defendants "published the defamatory statements in Illinois." Due process was likewise satisfied because defendants had minimum contacts with the forum state, the suit arose from defendants' contacts with the state, and exercising jurisdiction over the matter was reasonable under the specific circumstances of this case. Furthermore, plaintiff's out-of-state residency was not determinative of whether Illinois courts had personal jurisdiction over defendants.

¶ 10    Defendants replied that, regardless of where the letters were sent, the letters were allegedly sent by two nonresidents and targeted a nonresident, thereby depriving the Illinois court of personal jurisdiction over them.[5]

¶ 11    The circuit court ultimately granted defendants' dismissal motion, concluding that "the most important question for jurisdictional purposes is where the person or entity who is targeted *** is based."[6] Consequently, because plaintiff is a non-resident, the court found that specific jurisdiction over defendants was unreasonable, stating, "it is not reasonable for Illinois to assert

---

complaint alleged that the defamatory letters were sent from a mailbox in Denver, located near one of the offices of Steven's employer, thus suggesting that Steven played a role in the alleged tort.

[5]In their reply, defendants also claimed that plaintiff and Susan were part of a civil conspiracy against Steven to "extort funds from him" and interfere with the ongoing spousal support proceedings in California.

[6]In granting defendants' section 2-619.1 motion to dismiss for lack of personal jurisdiction, the court did not address defendants' alternative basis for dismissal, *i.e.*, that plaintiff failed to state a proper claim for defamation *per se*, noting that "[d]ue to a lack of jurisdiction, this [c]ourt does not find it appropriate to further analyze the substantive matters in the pleadings pursuant to 735 ILCS 5/2-615." As noted above, however, the parties do not challenge that issue on appeal; accordingly, we decline to address the merits of plaintiff's defamation *per se* claim against defendants at this time.

specific jurisdiction over [d]efendants where neither Illinois nor the [p]laintiff has a compelling interest in litigating this case in the state of Illinois and [d]efendant[s] [have] not had sufficient minimum contacts with this state." The court thus concluded that it lacked specific jurisdiction and dismissed the case for that reason.[7]

¶ 12    We note that plaintiff, meanwhile, filed a nearly identical action against defendants in California, presumably as a precautionary measure in the event that he was unsuccessful in his appeal of the lower court's judgment in Illinois. In any event, we now turn to the merits of his appeal.

¶ 13                                    II. ANALYSIS

¶ 14    On appeal, plaintiff asserts that the circuit court erroneously granted defendants' dismissal motion because the court had personal jurisdiction over defendants where the Illinois long-arm statute was satisfied, the due process clauses of the United States and Illinois constitutions were met, and plaintiff's residency was not determinative of jurisdiction.

¶ 15    Section 2-619.1 of the Code allows the movants to combine a section 2-615 motion to dismiss (*id.* § 2-615) with a section 2-619 motion to dismiss (*id.* § 2-619). *In re Application of the County Treasurer*, 2012 IL App (1st) 101976, ¶ 28. While a section 2-615 motion attacks the legal sufficiency of the nonmovant's claim, a section 2-619 motion admits the legal sufficiency of his claim but asserts affirmative defenses or other matters that avoid or defeat it. *Id.* We review the lower court's judgment granting a section 2-619.1 motion *de novo*. *Id.*

---

[7]This case was originally dismissed with prejudice; however, plaintiff filed a motion for reconsideration, arguing that since the court did not decide the case on the merits, the case should have been dismissed without prejudice. The lower court granted plaintiff's motion on August 23, 2023, and amended the dismissal to be without prejudice.

¶ 16     Personal jurisdiction is the power of a court over the parties in a case. *Lightfoot v. Cendant Mortgage Corp.*, 580 U.S. 82, 95 (2017). Additionally, personal jurisdiction is divided into general and specific jurisdiction. *Aasonn, LLC v. Delaney*, 2011 IL App (2d) 101125, ¶ 14. A court has general jurisdiction over defendants if they have "continuous and systematic contacts with the forum state." *Id.* Contrarily, a court has specific jurisdiction over defendants if they "purposefully directed" their actions toward the forum's residents and the action "arose out of those contacts." *Id.* In this case, the parties do not assert that the circuit court had general jurisdiction over defendants. The issue, instead, concerns whether there was specific jurisdiction over them.

¶ 17                                  A. Long-Arm Statute

¶ 18     A court has specific personal jurisdiction over nonresident defendants where (1) the requirements of the long-arm statute have been met, and (2) the exercise of jurisdiction over the defendants comports with due process under the Illinois and United States Constitutions. *In re Marriage of DiFiglio*, 2016 IL App (3d) 160037, ¶ 15. The Illinois long-arm statute, found in section 2-209 of the Code, provides, as relevant here, that:

> "Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:
>      ***
>      (2) The commission of a tortious act within this State[.]" 735 ILCS 2-209(1)(2) (West 2020).

Simply put, a plaintiff must show that the defendants committed an act satisfying one of the criteria of the long-arm statute and that the plaintiff's cause of action arose from that act. *In re Marriage of DiFiglio*, 2016 IL App (3d) 160037, ¶ 16. Moreover, courts have liberally construed this requirement in favor of the party asserting jurisdiction. *Id.*

¶ 19    As set forth, plaintiff in this case alleged that defendants sent letters to DRW partners located in Illinois and that the statements contained in those letters constituted defamation *per se* because they imputed that plaintiff lacked integrity and had committed the crimes of money laundering, wire fraud, unlicensed money transmitting, embezzlement, and tax evasion. According to plaintiff, those defamatory statements prejudiced him in his profession.[8]

¶ 20    It is well settled that the tort of defamation occurs where the defamatory statements are published. *Wesly v. National Hemophilia Foundation*, 2020 IL App (3d) 170569, ¶ 12. Additionally, publication of defamatory statements occurs when the statements are conveyed to third parties. *Missner v. Clifford*, 393 Ill. App. 3d 751, 763 (2009). Here, plaintiff has asserted personal jurisdiction over defendants, pursuant to section 2-209(a)(2) of the Illinois long-arm statute, because defendants allegedly sent letters to DRW partners, who received and read them in Illinois.[9] Publication of defendants' supposed statements, therefore, occurred in Illinois.[10]

---

[8]Statements that constitute defamation *per se* are words that impute a person (1) has committed a crime, (2) is infected with a loathsome communicable disease, (3) is unable to perform or lacks integrity in performing his employment duties, (4) lacks ability or otherwise prejudices that person in his profession, and/or (5) has engaged in adultery or fornication. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579-80 (2006).

[9]To the extent plaintiff asserted in his appellate brief that defendants "waived any argument that the Illinois long-arm statute" did not apply because they did not dispute that the defamatory letters were sent to individuals in Illinois, this is more of a concession than waiver. Regardless, we will address the merits of whether the long-arm statute was satisfied in this case.

[10]Whether defendants in this case actually sent the letters and whether the statements therein constitute defamation *per se* are not for this court to decide. As set forth, the circuit court dismissed this case for lack of personal jurisdiction without ruling on the merits of the case.

¶ 21                                          B. Due Process

¶ 22    The second step in deciding whether a court has specific jurisdiction over defendants is to determine whether the due process clauses of the United States and Illinois Constitutions have been satisfied. *Russell v. SNFA*, 2013 IL 113909, ¶ 29; *Wesly*, 2020 IL App (3d) 170569, ¶ 9.[11] To satisfy due process, a plaintiff must establish that (1) the defendants had "minimum contact" with the forum state so there was "fair warning" that the defendants may be brought into court in that state, (2) the action arose out of or related to the defendants' contact with the forum state, and (3) it is reasonable to require the defendants to litigate in the forum state. *Wesly*, 2020 IL App (3d) 170569, ¶ 18. The minimum contacts and fair warnings requirements are met if the defendants have "purposefully directed" their activities at residents of the forum state or "purposefully derived benefits from [their] interstate activities." (Internal quotation marks omitted.) *Id.* ¶ 20. Where, as here, "the plaintiff's claim is for an intentional tort, the inquiry focuses on whether the conduct underlying the claim was purposely directed at the forum state." *Id.* ¶ 21.

¶ 23    Additionally, if a plaintiff establishes that the nonresident defendants purposely directed their activities toward the forum state, courts must then determine whether it is reasonable to require the defendants to litigate in that state. *Commerce Trust Co. v. Air 1st Aviation Cos.*, 366 Ill. App. 3d 135, 146 (2006). To determine reasonableness, courts consider five factors: (1) the burden on the defendants to defend the action in the forum state, (2) the forum state's interest in adjudicating the suit, (3) the plaintiff's interest in obtaining effective relief, (4) the interstate

---

[11]Regarding personal jurisdiction over nonresident defendants, Illinois courts have found no "substantive difference" between the due process clauses of the United States and Illinois Constitutions. *Russell*, 2013 IL 113909, ¶ 32; see *Aasonn, LLC*, 2011 IL App (2d) 101125, ¶ 13 (observing, "it is generally true that, when federal due process concerns regarding personal jurisdiction are satisfied, so are Illinois due process concerns").

judicial system's interest in obtaining the most efficient resolution of the suit, and (5) the shared interests of the several states in promoting fundamental social policies. *Id.*; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). Where, as here, a plaintiff has established that the defendants purposefully directed their activities at the forum state, the defendants must make a compelling case that litigating the dispute there would be unreasonable. See *Wesly*, 2020 IL App (3d) 170569, ¶ 31 (noting that "[c]ompelling cases are limited to those rare situations where Illinois's interests in adjudicating the dispute are clearly outweighed by the burden of subjecting the defendant[s] to litigation in Illinois").

¶ 24    In this case, plaintiff's complaint alleged that defendants purposefully directed their activities toward Illinois when they intentionally sent five defamatory letters about plaintiff to DRW partners located in that state. By sending the five letters, defendants established minimum contacts with Illinois, thereby satisfying the first due process requirement. Further, plaintiff's alleged injuries arose out of, and were directly related to, the defamatory letters, which were published in Illinois. Accordingly, defendants' contacts with Illinois gave rise to plaintiff's suit, satisfying the second requirement.

¶ 25    Next, we must weigh the reasonableness factors to determine whether defendants should be required to litigate plaintiff's suit in Illinois. While the first reasonableness factor is not satisfied because defendants, who are California residents, face a notable burden in litigating the case in Illinois, we find the other four factors are met in this case.

¶ 26    The second factor is satisfied because plaintiff's injuries stemmed from defendants' supposedly defamatory statements, which were published in Illinois. Illinois, therefore, has a strong interest in resolving the dispute concerning those defamatory letters and in preventing defamation in the state. Third, plaintiff has a strong interest in obtaining relief in Illinois because

his alleged injuries occurred there when the defamatory letters about him were sent to DRW partners located in the state. Furthermore, since plaintiff is a senior executive at DRW, he has an incentive to defend his reputation amongst Illinois DRW employees. Fourth, Illinois is an efficient forum for the resolution of plaintiff's suit since the tort occurred there and the DRW partners who received the defamatory letters are located in Illinois. Moreover, requiring plaintiff to litigate this matter in California would be inconvenient and shift the burden onto him instead of defendants and it would not be more practical or efficient to hear the case there as opposed to Illinois. Last, Illinois has a strong social policy of compensating tort victims, like plaintiff, who are defamed in the state.

¶ 27    Based on the foregoing, we conclude that exercising jurisdiction over defendants in Illinois is reasonable even though they are not residents of the state, since the remaining factors outweigh any burden defendants may face in having to defend themselves in an Illinois court.

¶ 28    Defendants, nonetheless, argue that the controlling factor for deciding personal jurisdiction is the plaintiff's residency, relying on the federal district court case *Strabala v. Zhang*, 318 F.R.D. 81 (N.D. Ill. 2016). Defendants have misconstrued the court's ruling in *Zhang*, however.

¶ 29    In *Zhang*, the court observed that the nature of the constitutional minimum contacts and purposeful-availment inquiries largely depends on whether the plaintiff's claims are intentional and lie in tort (versus breach of contract for example). *Id.* at 108. Where, as here, the plaintiff's claims are based in tort, the U.S. Court of Appeals for the Seventh Circuit distills three requirements, also known as the *Calder* test, for determining whether conduct was "purposefully directed" at the forum state: (1) intentional conduct (or "intentional and allegedly tortious" conduct), (2) expressly aimed at the forum state, (3) with the defendants' knowledge that the

effects would be felt—meaning, the plaintiff would be injured—in the forum state. (Internal quotation marks omitted.) *Id.* at 109. As shown above, all three requirements have been met in this case, where plaintiff alleged that defendants intentionally sent five defamatory letters to DRW partners in Illinois with the knowledge that plaintiff's injuries would be felt there since the defamatory letters were intended to injure plaintiff's reputation with his employer and fellow coworkers, who were located in and read the letters in the forum state.

¶ 30    While the *Zhang* court noted that "the question for jurisdictional purposes is where the person or entity who is targeted by the e-mail is based," it is clear that the court was not referring to the residency of the defamed party; rather, the court was referring to the residency of the targeted recipient of the defamatory statements, *i.e.*, where the effect of the defamatory material would be felt. *Id.* at 112; see *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010) (noting that "where, as here, the plaintiff's claims are for intentional torts, the inquiry focuses on whether the conduct underlying the claims was purposely directed at the forum state"). It is also important to note that in *Zhang*, the defamatory material was conveyed through e-mails, not in written letters that were physically delivered to the recipients, as was the case here. Unlike an e-mail, which can be accessed from anywhere in the world, the physical letters in this case were received and read by the DRW partners in Illinois. *Zhang*, therefore, does not lend support to defendants' arguments in this case.

¶ 31    Finally, defendants argue that the principle of comity requires this suit to be dismissed because plaintiff filed a nearly identical action against them in California. We disagree. According to the principle of comity, when there is an identical action pending in another jurisdiction involving the same cause, a state may stay or dismiss the current proceeding before it out of respect for the other state's laws and judgments. *Whittmanhart, Inc. v. CA, Inc.*, 402 Ill.

App. 3d 848, 853 (2010). Where the instant action appears to have been the first to be properly filed, as it has a legitimate and substantial relation to the forum state, as is the case here, the principle of comity does not require dismissal of the instant action in deference to the other state court. See *id.* at 855.

¶ 32     As we determined above, plaintiff's suit has a legitimate and substantial relation to the forum state because the Illinois long-arm statute has been satisfied, defendants had minimum contacts with the forum state, the action arose out of defendants' contacts with the state, and exercising jurisdiction over defendants in Illinois is reasonable. Furthermore, plaintiff filed the California suit after the circuit court erroneously dismissed his Illinois suit for lack of personal jurisdiction. Plaintiff has correctly observed that if the California case continues after his Illinois claim is reinstated, then the principle of comity could apply because, at that point, there would be an identical action between the same parties in another jurisdiction. This case has not yet reached that point, however. Accordingly, the principle of comity does not require dismissal. Given that this case has a legitimate and substantial relation to the forum state, it should remain in Illinois.

¶ 33                               III. CONCLUSION

¶ 34     For the foregoing reasons, we conclude that plaintiff has met his burden of establishing that defendants are subject to personal jurisdiction in Illinois under a specific jurisdiction theory. We therefore reverse the circuit court's judgment granting defendants' motion to dismiss the case for lack of personal jurisdiction and remand for further proceedings consistent with this decision.

¶ 35     Reversed and remanded.

---

### *Brody v. Hoch*, 2024 IL App (1st) 231524

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2022-L-009869; the Hon. Mary Colleen Roberts, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys**<br>**for**<br>**Appellant:** | Michael J. Gill and Raul C. Loureiro, of Mayer Brown LLP, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys**<br>**for**<br>**Appellee:** | Jefferey Ogden Katz, of The Katz Law Firm, P.C., of Chicago, for appellees. |

---